BOSTON TEACHERS UNION, LOCAL 66, AMERICAN
FEDERATION OF TEACHERS (AFL-CIO)[1] *vs.* SCHOOL
COMMITTEE OF BOSTON & others.[2]

Suffolk.    January 4, 1977. — May 25, 1977.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & LIACOS, JJ.

*Contempt.*

A complaint by a teachers' union seeking an adjudication of civil contempt against a school committee for alleged violations of terms of a collective bargaining agreement which had been submitted to voluntary interest arbitration under G. L. c. 150E, § 9, fifth paragraph, was properly dismissed where the agreement provided for a grievance procedure to resolve alleged violations; the fact that a Superior Court judge confirmed the arbitrator's award in the interest arbitration did not turn the agreements or any part of them into a mandatory injunction. [618-619]

CIVIL ACTION commenced in the Superior Court on February 23, 1976, seeking an adjudication of civil contempt.

The case was heard by *Robert Sullivan*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Albert L. Goldman (John F. McMahon* with him) for the Boston Teachers Union, Local 66, American Federation of Teachers (AFL-CIO).

*Kevin F. Moloney*, Assistant Corporation Counsel (*Michael J. Betcher*, Assistant Corporation Counsel, with him) for the School Committee of Boston & others.

· KAPLAN, J.   In *School Comm. of Boston* v. *Boston Teachers Local 66*, decided this day, we affirm a final judgment of the Superior Court confirming the award of an arbitrator in an "interest" arbitration between the present

---

[1] Through its president and executive vice-president as representative parties.

[2] City of Boston and mayor of Boston.

parties under G. L. c. 150E, § 9, fifth paragraph. Following the entry of that judgment on December 24, 1975, in the Superior Court, the Teachers Union on February 23, 1976, filed a complaint in that court seeking an adjudication of civil contempt against the School Committee and the other municipal parties.

The violations charged in the complaint consisted of alleged failures to comply with various provisions of the agreements for 1974-1975 as awarded by the arbitrator and confirmed by the judgment. Some of these provisions had been carried forward by the arbitrator from the 1973-1974 agreements. Others were modifications settling disputed "items" in the arbitration. To cite a provision in the latter class, the arbitrator had disposed of part of an item as to the maximum number of pupils in a physical education class by inserting in the text of the 1973-1974 contract, used as a matrix, a statement that the maximum was to be thirty-five. In its complaint the Teachers Union alleged that the School Committee had failed to comply, and prayed relief by way of contempt. Numerous provisions were similarly cited.[3]

After various preliminaries which need not be described, a judge of the Superior Court entered judgment dismissing the complaint on the essential ground that it did not present a case amenable to a proceeding in contempt, and it is this judgment that is under review on the present appeal. We think the judge was right, and for a reason that can be stated briefly.

What eventuated from the arbitration was entire operative agreements for 1974-1975, and it was a material term of those agreements that alleged violations must be submitted to grievance procedures with ultimate disposition through grievance arbitration.[4] That was the proper re-

---

[3] We count alleged violations under six "items" (each item could have its own complexities) and a considerable array of violations under other provisions of the agreements.

[4] The arbitration clauses set out a three-step procedure to resolve disputes culminating in arbitration under the "voluntary labor arbitration rules" of the American Arbitration Association.

Boston Teachers Union *v.* School Committee of Boston.

course of the Teachers Union for the violations alleged, and so the judge below held in effect. Otherwise stated, the judge held in substance that the judgment confirming the award did not turn the operative agreements or any part of them into a mandatory injunction. In this view we need not elaborate on the remark of the judge below that an attempt to deal on a basis of civil contempt with the multitudinous issues involved in the alleged infractions, large and small, pressed or to be pressed by the Teachers Union, would be a peculiar use of the jurisdiction and judge-power of the Superior Court. If it were considered a matter of discretion whether the alleged violations should be handled as contract grievances or as contempts, we would elect to consign them to the former procedure.

Arguments of the Teachers Union based on legislative history seem to us quite unpersuasive.

In *In re Certain Carriers Represented by the E., W. & S.E. Carriers' Conference Comms.,* 253 F. Supp. 532 (D.D.C. 1966), there was an arbitral award of the "interest" type on a given subject matter which was validated by the court. A labor contract containing a grievance arbitration clause was outstanding. In the highly exceptional circumstances of the case, far removed from the usual collective bargaining setting,[5] the union was permitted to apply direct to the court for enforcement of the award. Even so, the court made it clear that it was not proposing to take over the general enforcement of the award, but was reserving the right to "invoke the doctrine of *forum non conveniens.*" *Id.* at 534. The case is not inconsistent with the present decision.

*Judgment affirmed.*

---

[5] For the history, see *Brotherhood of Locomotive Firemen & Enginemen* v. *Chicago, Burlington & Quincy R.R.,* 225 F. Supp. 11, 14-17 (D.D.C.), aff'd sub nom. *Brotherhood of Locomotive Firemen & Enginemen* v. *Certain Carriers Represented by the E., W. & S.E. Carriers' Conference Comms.,* 331 F.2d 1020 (D.C. Cir.), cert. denied, 377 U.S. 918 (1964).