MASSACHUSETTS COMMUNITY COLLEGE COUNCIL MTA/NEA
*vs.* LABOR RELATIONS COMMISSION.

Suffolk. April 6, 1988. — May 9, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Labor,* Public employment, Collective bargaining, Arbitration. *Administrative Law,* Judicial review, Agency's interpretation of statute. *Statute,* Construction. *Public Employment,* Collective bargaining.

In reviewing a decision of the Labor Relations Commission interpreting provisions of G. L. c. 150E, § 9, that either party to a labor dispute may petition the Board of Conciliation and Arbitration for determination of a bargaining impasse "[a]fter a reasonable period of negotiation over the terms of a collective bargaining agreement," this court, according "due weight and deference" to the Commission's statutory interpretation and finding no ambiguity in the statutory language, affirmed the Commission's ruling that the dispute resolution procedures provided in § 9 were not available to parties who had reached a bargaining impasse during the life of their collective bargaining agreement. [353-354]

APPEAL from a decision of the Labor Relations Commission.

The Supreme Judicial Court granted a request for direct appellate review.

*Sandra C. Quinn* for the plaintiff.

*Jean Strauten Driscoll* for Labor Relations Commission.

*Donna DeSimone Buckley & Donald S. MacCalmon,* for National Association of Government Employees, amicus curiae, submitted a brief.

*Sarah Kerr Garraty,* Special Assistant Attorney General, for Board of Conciliation and Arbitration, amicus curiae, submitted a brief.

*Joyce A. Kirby & Judith A. Wong,* Special Assistant Attorneys General, for Board of Regents of Higher Education, amicus curiae, submitted a brief.

NOLAN, J. The plaintiff, Massachusetts Community College Council MTA/NEA (MCCC), challenges a decision issued in

402 Mass. 352                                                      353

Massachusetts Community College Council MTA/NEA *v*. Labor Relations Commission.

an order from the Labor Relations Commission (Commission), which held that the dispute resolution procedures provided in G. L. c. 150E, § 9 (1986 ed.), are not available to parties who reach a bargaining impasse during the term of a collective bargaining agreement. MCCC filed with the Commission a motion to reconsider. The motion was denied. MCCC then filed a timely notice of appeal with the Appeals Court pursuant to G. L. c. 150E, § 11 (1986 ed.). We granted an application for direct appellate review.

Section 9 states that either party to a labor dispute may petition the Board of Conciliation and Arbitration for determination of a bargaining impasse "[a]fter a reasonable period of negotiation over the terms of a collective bargaining agreement." G. L. c. 150E, § 9.[1] The Commission ruled that because this language, when given its plain and ordinary meaning, does not encompass bargaining impasses which occur during the life of a collective bargaining agreement, MCCC was not entitled to avail itself of the § 9 mediation procedures. We accord due weight and deference to an administrative body's reasonable interpretation of a statute within its charge, and will not lightly supplant its judgment. *Massachusetts Medical Soc'y* v. *Commissioner of Ins.*, *ante* 44, 62 (1988). We remain mindful, however, that the duty ultimately to interpret the statute rests with the court. See *School Comm. of Wellesley* v. *Labor Relations Comm'n*, 376 Mass. 112, 116 (1978). After reviewing the language of § 9 we affirm the decision of the Commission.

For MCCC to prevail, we would have to interpret the phrase "negotiation over the terms of a collective bargaining agreement" to include issues neither raised nor bargained for during the negotiations as "terms" of the collective bargaining agreement, despite the fact that these issues arise after the agreement is finalized. We find such a reading strained, and not in compliance with the plain and ordinary meaning of the language employed by the Legislature. See *New England Medical Center*

---

[1] A recent amendment to § 9 (St. 1986, c. 198) does not touch the issue before us.

*Hosp., Inc.* v. *Commissioner of Revenue*, 381 Mass. 748, 750 (1980).

We will not engage, as MCCC would have us do, in an analysis of a statute's legislative history to seek justification for a particular construction, where the statutory language at issue suggests no ambiguity of meaning. See *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977). Nor shall we interject new meaning into the language based solely on asserted policy considerations. *Commonwealth* v. *Lammi*, 386 Mass. 299, 300 (1982). "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." *James J. Welch & Co.* v. *Deputy Comm'r of Capital Planning & Operations*, 387 Mass. 662, 666 (1982), quoting *Caminetti* v. *United States*, 242 U.S. 470, 485 (1917). The decision of the Commission is affirmed.

*So ordered.*