CITY OF BOSTON vs. BOSTON POLICE PATROLMEN'S
ASSOCIATION, INCORPORATED
(and a consolidated case[1]).

Suffolk.   October 3, 1988. — January 5, 1989.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Police*, Assignment of duties, Collective bargaining. *Labor*, Collective bar-
    gaining, Public employment, Arbitration. *Arbitration*, Police, Collective
    bargaining, Authority of arbitrator, Scope of arbitration. *Municipal Cor-
    porations*, Collective bargaining. *Contract*, Collective bargaining con-
    tract.

The police commissioner of Boston has the management prerogative under
    St. 1962, c. 322, §§ 10 & 11, to determine the identity and number of
    police officers assigned to marked patrol vehicles, and the commis-
    sioner's decisions on these matters were beyond the scope of collective
    bargaining. [683-685]
This court held that a dispute between the city of Boston and the Boston
    Police Patrolmen's Association, Incorporated, concerning the meaning
    and scope of an arbitration clause in the applicable collective bargaining
    agreement should be determined, in the first instance, in proceedings
    before an arbitrator pursuant to the grievance procedure provided in the
    agreement. [685-687]

CIVIL ACTIONS commenced in the Superior Court Department
on August 12, 1977, and February 23, 1983, respectively.

The cases were consolidated for trial and were heard by
*James F. McHugh*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Frank J. McGee* (*Steven M. Guiney* with him) for Boston
Police Patrolmen's Association, Incorporated, & another.

*Lawrence J. Ball* for the city of Boston & another.

[1] Robert T. Guiney vs. Police Commissioner of Boston and City of Boston.
Guiney is chairman of the Boston Police Patrolmen's Association, Incorporated.

LYNCH, J. This appeal arises from the opposition of the Boston Police Patrolmen's Association, Incorporated (association), to the implementation by the Boston police department (department) of a patrol and deployment plan which, inter alia, provides for the assignment of one officer per marked patrol vehicle instead of two. In the first of these two consolidated actions, the city of Boston (city), pursuant to G. L. c. 150C, § 11 (1986 ed. & 1988 Supp.), filed a complaint in the Superior Court seeking to vacate a 1977 arbitrator's award on the ground that it was beyond the scope of the arbitrator's authority. The arbitrator had determined that the proposed assignment plan violated the applicable collective bargaining agreement.

The second case (injunction action) arose in 1983, when Guiney, on behalf of the association, filed a complaint not only seeking to enjoin the department's implementation of the plan but also a declaration that the city was required to submit certain aspects of the plan to binding arbitration. A judge in the Superior Court ordered that the implementation of the plan be preliminarily enjoined. The order was subsequently vacated by a single justice of the Appeals Court on interlocutory appeal. See G. L. c. 214, § 6 (1986 ed.). The Appeals Court affirmed the order of the single justice. After the preliminary injunction was vacated, the deployment plan went into effect.

The actions were then tried before a Superior Court judge, sitting without a jury, who vacated the 1977 arbitrator's award, ruling that the police commissioner's authority to assign officers constituted a management prerogative which cannot be delegated to an arbitrator.[2] In the injunction action the judge ruled that the parties were not required to proceed to binding arbitration pursuant to Art. XVI, § 17, of the collective bargaining

---

[2] The judge also denied the association's motion to amend the judgment vacating the arbitrator's award. The motion requested that the judge order a rehearing before the arbitrator where he could assess the plan's impact and damages and make an appropriate award. However, the issue submitted to the arbitrator did not include issues of impact or damages. Even assuming that an arbitrator could fashion a remedy regarding impact or damages, the judge properly vacated the arbitrator's award based upon the issue submitted by the parties. Cf. *Dennis-Yarmouth Regional School Comm.* v. *Dennis Teachers Ass'n,* 372 Mass. 116, 118-119 (1977).

agreement, unless (a) the city council of Boston (city council) authorized the arbitration proceeding as required by G. L. c. 150E, § 9 (1986 ed.), and (b) the issues to be arbitrated were determined by the grievance procedure contained in Art. VI of the collective bargaining agreement. The association argued that Art. XVI, § 17, of the collective bargaining agreement, which provides for "binding *interest* arbitration" requires the city not only to arbitrate matters relating to new or successive contract negotiations, but also to arbitrate disputes arising during the term of an existing agreement.[3] After a timely appeal, we transferred the matter to this court on our own motion.

The trial judge found the following facts. The association is the certified collective bargaining representative for all department police officers below the rank of sergeant. The association and the city entered into a new collective bargaining agreement on September 17, 1982, which added the binding interest arbitration provision. On December 6, 1982, the city notified the association of the possibility of changes in staffing

---

[3] The association's interpretation of the "interest" arbitration provision is curious since we have noted previously that " 'interest' arbitration involves the settlement of the terms of a contract between the parties" and that "grievance" arbitration involves a "claimed violation or interpretation of the terms of an existing contract." *School Comm. of Boston* v. *Boston Teachers Local 66,* 372 Mass. 605, 606 n.4 (1977).

Article XVI, § 17, of the collective bargaining agreement provides: "On or after March 1, 1982, and upon notice given by the Association or the City, the parties shall bargain collectively as to the issues set forth in their bargaining notice. If, after thirty (30) calendar days[,] or longer if the parties agree to an extension, no agreement has been reached as to the disposition of such issues, then, upon notice by the City or the Association, such issues shall be submitted to final and binding interest arbitration. The City and the Association expressly agree to undertake such arbitration for the resolution of all such issues raised under the scope of arbitration as set forth in St. 1973 c. 1078 § 4 and to be bound by the result of such arbitration. The 'last, best offer' provisions and procedures of the former St. 1973 c. 1078 § 4 are incorporated herein and to the extent available, shall be pursued in the conduct of such arbitration, provided, however, that in the event such pursuit is deemed unlawful, then to accomplish the basic understanding of this Paragraph in terms of resolving all unresolved issues raised by the City or the Association under St. 1973 c. 1078 § 4 through final and binding interest arbitration, the City and the Association agree to follow the interest arbitration procedure as set forth in M.G.L. c. 150E, § 9."

assignments for association members. However, the city delayed implementing the patrol and deployment plan while it met with the association to discuss the plan's "impact."

The association objected consistently to four of the plan's features: (1) the use of single officers in marked cruisers or on motorcycles to respond to "Priority Two" or "Priority Three" assistance calls, (2) the creation of "rapid response units" to respond to "Priority One" calls, (3) the plan's implicit requirement that responding officers enter buildings alone, and (4) the plan's reorganizing five existing districts of the department into two new districts.

During the discussions regarding the plan's implementation, the association maintained that the plan changed the existing agreement and involved mandatory subjects which should be put to the full collective bargaining process. The city consistently maintained that the plan's content contained exercises of management prerogative as to which no bargaining was required. The two sides discussed, but did not agree to, binding arbitration. They also discussed the possibility of a pay increase if the plan were implemented.

The collective bargaining agreement in effect when the association sought injunctive and declaratory relief contained the procedure for binding interest arbitration. However, this provision has not been submitted to, or approved by, the city council. Similarly, no request for binding interest arbitration over any aspect of the plan has been submitted to, or approved by, the city council. The grievance procedure under the collective bargaining agreement ends in arbitration.[4] No grievance regarding the city's refusal to arbitrate the plan's impact under the binding interest arbitration provision has been commenced.

1. *Arbitration award.* When the parties agreed to submit their dispute to an arbitrator in 1977, they stipulated that the issue for arbitration was: "Is it a violation of the collective bargaining Agreement for the City to assign one uniformed police officer to a marked police vehicle performing regular

---

[4] A "grievance" is defined as "any dispute concerning the interpretation, application, or enforcement of this Agreement." Art. 6, § 1.

patrol or wagon duty?"[5] The arbitrator found that it was. The judge ruled that "decisions concerning the identity and number of officers who are to spend their tours of duty riding in marked police cars surely fall[s] well within [the] . . . generous embrace" of St. 1906, c. 291, as appearing in St. 1962, c. 322, § 1, and vacated the award. Section 10 of c. 322 provides that the police commissioner "shall have authority to appoint, establish and organize the police of" the city. In addition, § 11 provides that the "police commissioner shall have cognizance and control of the government, administration, disposition and discipline of the department, and of the police force of the department and shall make all needful rules and regulations for the efficiency of said police." The commissioner's authority, pursuant to this act, has been recognized to be broad.[6]

In the past this court has held that certain subjects simply are beyond the scope of public sector collective bargaining. See, e.g., *School Comm. of Boston* v. *Boston Teachers Local 66*, 378 Mass. 65, 71-72 (1979). The police commissioner's decision to assign one officer, as opposed to two, to a marked patrol vehicle is one of those subjects which constitutes management prerogative and is nondelegable and, therefore, beyond an arbitrator's authority. *Chief of Police of Dracut* v. *Dracut*, 357 Mass. 492, 502 (1970). Cf. *Taunton* v. *Taunton Branch of the Mass. Police Ass'n*, 10 Mass. App. Ct. 237, 243 (1980); *Boston* v. *Boston Police Superior Officers Fed'n*, 9 Mass. App. Ct. 898 (1980); *Boston* v. *Boston Police Patrolmen's Ass'n*, 8 Mass. App. Ct. 220, 226-227 (1979). See also

---

[5] Although the city agreed to submit the issue to arbitration, it did not waive its right to claim that the issue was beyond the arbitrator's authority and thus not subject to arbitration. *School Comm. of Boston* v. *Boston Teachers Local 66*, 378 Mass. 65, 66 (1979).

[6] See, e.g., *Nolan* v. *Police Comm'r of Boston*, 383 Mass. 625, 630 (1981) (authority and duty to determine officer's fitness to perform duties); *Broderick* v. *Police Comm'r of Boston*, 368 Mass. 33, 41 (1975), cert. denied, 423 U.S. 1048 (1976) (authority to question officers regarding private conduct); *Boston Police Patrolmen's Ass'n* v. *Boston*, 367 Mass. 368, 371-372 (1975) (authority to require officers seeking elective office to take leave of absence without pay during campaign).

G. L. c. 150E, § 7 (*d*) (1986 ed. & 1988 Supp.). Therefore, the judge properly vacated the arbitrator's award.

2. *Injunction case*. The association argues that the city was required to bargain over (1) the procedures by which the plan was to be implemented, and (2) the plan's impact on association members. The association seeks a declaration by this court that such "impact" bargaining was subject to the binding interest arbitration provision contained in the collective bargaining agreement.[7]

The city correctly concedes that, if a managerial decision has impact upon or affects a mandatory topic of bargaining, negotiation over the impact is required, citing *School Comm. of Newton* v. *Labor Relations Comm'n*, 388 Mass. 557, 564-567 (1983). See G. L. c. 150E, § 6 (1986 ed.). See also *School Comm of Holbrook* v. *Holbrook Educ. Ass'n*, 395 Mass. 651, 655 (1985); *Burlington* v. *Labor Relations Comm'n*, 390 Mass. 157, 165-166 (1983); *Boston Teachers Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 213 (1982). The association does not dispute that the city has met with it in order to negotiate the impact of the plan's implementation, but argues that, since these negotiations have resulted in impasse,[8] the city is required to submit the matter to binding interest arbitration.

The association relies on the binding interest arbitration provision contained in Art. XVI, § 17, of the collective bargaining agreement.[9] However, the city argues that the arbitration provision contained in Art. XVI, § 17, only governs the procedures for creating a new or successor collective bargaining agreement and does not apply to interim disputes relative to safety, impact, or the rights of employees under an existing agreement. Thus,

---

[7] The association relies solely on the interest arbitration provision in Art. XVI, § 17, and therefore any other contractual or administrative remedies relative to grievance arbitration which may have been available to the association are not before this court.

[8] The single justice of the Appeals Court found that a bargaining impasse as to the plan's impact had been reached. No question is before us concerning this finding.

[9] See note 3, *supra*.

the scope of the arbitration provision in Art. XVI, § 17, will determine whether the city is required to proceed to binding arbitration to resolve any bargaining impasse concerning the impact of the plan's implementation.

Although the judge noted that the language of Art. XVI, § 17, could be applicable to "arbitration of every kind and description," including interim disputes, he correctly pointed out that "[t]he precise scope of the clause . . . is not for the court to decide in the first instance." As we have stated previously, when "[t]he collective bargaining agreement provides that the meaning of the agreement is a 'grievance' which can be submitted to arbitration . . . [t]he meaning of the agreement is for the arbitrator and not for the courts." *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 115 (1977). See *Boston Teachers Local 66* v. *School Comm. of Boston*, 372 Mass. 617, 618-619 (1977); *Blackstone-Millville Regional School Dist.* v. *Maroney*, 12 Mass. App. Ct. 877, 878-879 (1981); *Wachusett Regional Dist. School Comm.* v. *Wachusett Regional Teachers Ass'n*, 6 Mass. App. Ct. 851 (1978). Cf. *School Comm. of Southbridge* v. *Brown*, 375 Mass. 502, 504 (1978); G. L. c. 150C, § 2 (*b*) (2) (1986 ed.). Therefore, the judge was correct in declaring that the city and association are not required to proceed to binding interest arbitration until the scope of Art. XVI, § 17, has been finally determined in appropriate proceedings pursuant to the collective bargaining agreement's grievance procedure.[10]

Our conclusion that the parties' dispute concerning the meaning of the arbitration clause of Art. XVI, § 17, should be decided in the first instance by an arbitrator follows from the

---

[10] Because we find that the question whether Art. XVI, § 17, applies to interim disputes should be decided by an arbitrator in the first instance, we do not address whether § 17 requires approval by the city council. See G. L. c. 150E, § 9, which provides in part: "Any arbitration award in a proceeding voluntarily agreed to by the parties to resolve an impasse shall be binding on the parties and on the appropriate legislative body and made effective and enforceable pursuant to the provisions of chapter one hundred and fifty C, provided that said arbitration proceeding has been authorized by the appropriate legislative body or in the case of school employees, by the appropriate school committee."

fact that the grievance procedure contained in the collective bargaining agreement provides that any dispute concerning the interpretation of the agreement is a grievance which, if unresolved, results in arbitration. The existence of this grievance procedure indicates that the parties have agreed upon their own method for deciding, at least initially, what matters are arbitrable under Art. XVI, § 17. See G. L. c. 150E, § 8 (1986 ed. & 1988 Supp.).[11]

*Judgments affirmed.*

---

[11] Although the association argues that we could order the parties to proceed to binding interest arbitration pursuant to Art. XVI, § 17, and the arbitrator could determine, as a preliminary matter, whether the section applies to interim disputes, we believe the matter is resolved more properly pursuant to the agreement's existing grievance procedure. The association's argument that pursuing a determination by way of the grievance procedure would impose further delay and expense does not alter our position.

Our recent decision in *Massachusetts Community College Council MTA/ NEA* v. *Labor Relations Comm'n*, 402 Mass. 352 (1988), does not dictate a different result. There, we held that "the dispute resolution procedures provided in G. L. c. 150E, § 9 (1986 ed.), are not available to parties who reach a bargaining impasse during the term of a collective bargaining agreement." *Id.* at 353. Here, however, the issue is not statutory construction, but whether the parties intended, by the language they used in Art. XVI, § 17, to limit the binding interest arbitration provision only to new or successor contract negotiations. This does not mean that our decision in the *Massachusetts Community College Council* case is not relevant to the interpretation of Art. XVI, § 17. The provision's reference to G. L. c. 150E, § 9, interest arbitration procedures cannot be overlooked. However, as stated above, an arbitrator should interpret the provision in the first instance.