CITY OF BOSTON vs. BOSTON POLICE PATROLMEN'S
ASSOCIATION, INC.

No. 95-P-2069.

Suffolk. June 25, 1996. - September 5, 1996.

Present: DREBEN, GILLERMAN, & LAURENCE, JJ.

*Police,* Assignment of duties, Collective bargaining. *Labor,* Collective
bargaining, Public employment, Arbitration. *Contract,* Collective
bargaining contract. *Arbitration,* Police, Collective bargaining, Confirma-
tion of award.

Where §§ 10 and 11 of St. 1906, c. 291, as amended by St. 1962, c. 322,
§ 1, broadly authorize the police commissioner of the city of Boston to
administer and manage the operations of the police department and
where those sections are not enumerated in G. L. c. 150E, § 7(*d*), so as
to be superseded by the provisions of a collective bargaining agreement,
a grievance based on the police commissioner's assignment of manda-
tory overtime patrols was not arbitrable. [271-273]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 30, 1994.

The case was heard by *Thayer Fremont-Smith,* J.

*Michael P. Reagan,* Special Assistant Corporation Counsel,
for the plaintiff.

*Joseph G. Sandulli* for the defendant.

GILLERMAN, J. The certified bargaining representative of
certain uniformed police officers of the city of Boston (union)
filed a grievance under the procedures described in the collec-
tive bargaining agreement (agreement) between the union and
the city. The grievance alleged that the police department
violated article XII of the agreement by unilaterally convert-
ing the so-called Northeastern University detail — a weekend
walking patrol in the East Fenway area — from a paid detail

(which is voluntary)[1] to an overtime detail (which may be made mandatory). The paid detail rate of pay is higher than the overtime rate.[2]

The parties, by agreement, submitted the union's grievance to arbitration, including the question whether the grievance was arbitrable.[3] The arbitrator, after concluding that the grievance was arbitrable, entered an award in favor of the union and ordered the city to pay those officers who worked the detail the difference between the overtime rate and the paid detail rate. Thereafter the city commenced an action in the Superior Court seeking to vacate the award, see G. L. c. 150C, § 11(*a*), on the ground that the police commissioner has the statutory right to assign police officers to overtime duty under the authority of St. 1962, c. 322, § 1, amending, so far as is material to this opinion, §§ 10 and 11 of c. 291 of the acts of 1906 (herein, §§ 10 and 11).[4] The judge confirmed the award of the arbitrator and dismissed the complaint.

[1]Article XII sets forth the "procedure . . . in the assignment and recording of all paying police details." It defines a "paid detail" to include police service performed during off-duty time "which is paid for by the person or persons making the request for such service," and which is related to the performance of regular police duties.

[2]The union made no claim before the arbitrator, and makes no claim here, that the police department had adopted a subterfuge to avoid the payment of a higher rate of pay. Contrast *Boston* v. *Boston Police Superior Officers Fedn.*, 29 Mass. App. Ct. 907, 909 (1990).

[3]The fact that the city agreed to arbitrate the grievance is of no legal consequence if the issue is beyond the authority of the arbitrator. See *Boston* v. *Boston Police Patrolmen's Assn., Inc.*, 403 Mass. 680, 684 n.5 (1989).

[4]Sections 10 and 11 of St. 1906, c. 291, described the authority of the police commissioner of the city of Boston. These two sections, as amended by St. 1962, c. 322, § 1, provide, in pertinent part, as follows:

"Section 10 . . . . The police commissioner shall have authority to appoint, establish and organize the police of said city . . . ."

"Section 11 . . . . The police commissioner shall have cognizance and control of the government, administration, disposition and discipline of the department, and of the police force of the department and shall make all needful rules and regulations for the efficiency of said police . . . . Officers and members of said police shall, whether on or off duty, be subject to the rules and regulations made under this section."

At oral argument, the union emphasized that there was no basis in the record for any assertion that the police commissioner approved the challenged order to convert the patrol to overtime duty and, absent a decision by the commissioner, that order is not valid as no one else had the statutory authority to make such an order. It cannot be doubted, however,

The record contains no testimony at the hearing before the judge, and we assume there was none. Evidently, the parties proceeded solely on the arguments of counsel, the record of which is not before us. It appears from the briefs of both parties that the material facts, which are not many, are undisputed. Essentially, the facts are these.

At the request of various neighborhood groups in September, 1989, Northeastern University agreed to pay the hourly cost of a detail walking patrol for police officers in the East Fenway area of Boston. The agreed purpose was to "quell disturbances in and around the N.U. dorm neighborhood and *identify student perpetrators* for internal administrative sanctions and/or criminal prosecution" (emphasis original). In January, 1992, after the patrol went uncovered from time to time, the then bureau chief (now commissioner) Paul Evans directed that the patrol become a mandatory overtime assignment. It was not until 1993 that a patrolman working the detail was told that Northeastern University had continued to pay for the patrol after the conversion to mandatory overtime, and the grievance followed.

The city argues that §§ 10 and 11, see note 4, *supra*, are applicable to the facts of this case and the award of the arbitrator should not have been confirmed. Further, the city argues, G. L. c. 150E, § 7(*d*), states that the provisions of a collective bargaining agreement covering public employees prevail over any conflicting provisions of those statutes specifically enumerated in § 7(*d*). Sections 10 and 11, the argument continues, are not among the enumerated statutes, and the arbitration of the union's grievance is foreclosed if either of those sections governs the facts of this case. See *School Comm. of Natick* v. *Education Assn. of Natick*, 423 Mass. 34, 39 (1996) (statutes not enumerated in § 7[*d*] prevail over conflicting terms in collective bargaining agreements).

We are in substantial agreement with the city. The award should not have been confirmed for several reasons. First, it is by no means clear that the agreement is susceptible of an interpretation that covers the union's grievance. There is nothing in the agreement which prescribes the deployment of the police force as between voluntary paid details and

that the order, which the city seeks to validate in these proceedings, has been approved and adopted by the commissioner.

overtime assignments,[5] while article V of the agreement, captioned "MANAGEMENT RIGHTS," effectively reserves to the mayor and the police commissioner "the regular and customary rights and prerogatives of municipal management" — a reference, no doubt, to the long-standing and overriding authority of §§ 10 and 11. See note 4, *supra.*

A more fundamental consideration is the scope of §§ 10 and 11. We have discussed the "zone of managerial authority" reserved to the police commissioner under the provision of these sections. See *Boston* v. *Boston Police Superior Officers Fedn.,* 29 Mass. App. Ct. 907, 908-909 (1990). There we said that considerations of public safety and a disciplined police force require managerial control over matters such as staffing levels, assignments, uniforms, weapons, definition of duties, and deployment of personnel. *Ibid.* More generally, the police commissioner's authority under c. 322 "has been recognized to be broad." *Boston* v. *Boston Police Patrolmen's Assn., Inc.,* 403 Mass. 680, 684 (1989). In this last cited case, the court held that an assignment of one officer, rather than two, to a marked patrol vehicle is a management prerogative and beyond an arbitrator's authority. The *Boston Police Patrolmen's Assn., Inc.* case and the *Boston Police Superior Officers Fedn.* case, stand for the proposition that the deployment of officer personnel to meet the tasks and responsibilities of the department is a fundamental and customary prerogative of municipal management which falls squarely within the rights of management referred to in article V of the agreement (mayor and commissioner have customary rights and prerogatives of municipal management), and § 11 ("The police commissioner shall have . . . control of the . . . administration [and] disposition . . . of the department . . ."). See cases collected in note 6 to the court's opinion in *Boston* v. *Boston Police Patrolmen's Assn., Inc.,* 403 Mass. at 684. See also *Boston Police Patrolmen's Assn., Inc.* v. *Police Commr. of Boston,* 4 Mass. App. Ct. 673, 674 (1976) ("The defendant had authority to organize and administer the police department").[6] It follows that the award should not have been confirmed. See

---

[5]Article IX, section 2, deals with *scheduling* of overtime, while article XII deals with the *procedure* to "be adhered to in the assignment and recording of all paying police details."

[6]The union refers us to cases decided by the Labor Relations Commission holding that the allocation and assignment of private details among

*Massachusetts Coalition of Police, Local 165, AFL-CIO* v. *Northborough,* 416 Mass. 252, 256 (1993), quoting from *Dennis-Yarmouth Regional Sch. Comm.* v. *Dennis Teacher's Assn.* 372 Mass. 116, 119 (1977) ("[A]n agreement to arbitrate a dispute which lawfully cannot be the subject of arbitration [is] equivalent to the absence of a controversy covered by the provision for arbitration").

Finally, the union argues that the decision of the bureau chief was "not based upon a matter of public policy or public safety," and therefore the detail was purely private. Quite aside from the fact that we have no record before us upon which we might consider the issue, the union's argument cannot prevail. As noted above, the scope of § 11 is sufficiently broad to include decisions made solely to manage the "administration and disposition . . . of the department."

The judgment of the Superior Court must be reversed, and a new judgment shall enter vacating the award of the arbitrator.

*So ordered.*

police officers was a mandatory subject of bargaining, the most recent of which is *Town of Falmouth,* 20 MLC 1555 (1994). *Falmouth* did not present the question of the commissioner's power to decide whether a detail was an overtime or paid detail, and is inapposite.