City of Boston *v.* Boston Police Superior Officers Federation.

## CITY OF BOSTON *vs.* BOSTON POLICE SUPERIOR OFFICERS FEDERATION.

No. 99-P-294.

Suffolk. November 6, 2000. - August 17, 2001.

Present: JACOBS, KAPLAN, & GILLERMAN, JJ.

*Arbitration,* Authority of arbitrator, Police, Collective bargaining. *Police,* Assignment of duties, Collective bargaining. *Municipal Corporations,* Police. *Labor,* Collective bargaining, Arbitration.

A Superior Court judge did not err in vacating an arbitrator's award that constituted a decision as to the propriety of the assignment of a police lieutenant to replace another police officer as acting day commander, where the award impermissibly intruded on the discretion of the police commissioner of Boston to make discretionary appointments. [298-301]

CIVIL ACTION commenced in the Superior Court Department on February 22, 1996.

The case was heard by *Herman J. Smith, Jr.,* J.

*James F. Lamond* for the defendant.

*David M. Connelly,* Special Assistant Corporation Counsel, for the plaintiff.

JACOBS, J. The Boston Police Superior Officers Federation (Federation)[1] appeals from a decision of a Superior Court judge vacating an arbitrator's award on the ground that it impermissibly intruded on the discretion of the police commissioner of Boston to make temporary appointments. We affirm the judgment of the Superior Court.

*Background as set forth in the arbitrator's decision.* Michael L. Galvin, Jr., a Boston police lieutenant, was assigned as act-

---

[1]The Federation represents Boston police officers in the ranks of sergeant, lieutenant, and captain.

ing day commander in the operations division[2] in April, 1992. Believing the position to involve a captain's responsibilities, Galvin filed a grievance through the Federation, seeking the salary differential between his pay and that of a captain. The issue was resolved in Galvin's favor through an agreement between the Federation and city officials that provided that Galvin would be compensated retroactively at a captain's rate of pay and be paid at that rate "to the date he ceases to work out of grade in the Operations Division." In December, 1992, a captain was transferred to replace Galvin. Galvin remained in the operations division, but at a lieutenant's rate of pay. In August, 1993, the captain transferred to another position. Galvin again was assigned the duties of day commander, and as a result of a second grievance, received the salary differential for the period he performed those duties.

On November 10, 1993, Lieutenant John Gifford was transferred to replace Galvin as acting day commander. Gifford served in that capacity until one Captain Stapleton was appointed to the position on a permanent basis on February 28, 1995.[3] Galvin, having been returned on November 10, 1993, to his former duties in the operations division at the rank and pay of a lieutenant, filed a third grievance. That grievance resulted in the arbitrator's award of the differential in compensation Galvin would have earned between that date and February 28, 1995, the date the captain was appointed, i.e., the differential Galvin would have earned if he had not been replaced by Gifford.

The arbitrator stated that the question before her was: "Did the City violate the collective bargaining agreement by virtue of the compensation paid to Lieutenant Michael Galvin for the period between November 1[0], 1993 and February 28, 1995?" In the course of responding affirmatively to that question and ordering the city to pay Galvin the difference between a

---

[2]Also known as the "Turret," the division is the communications center for the Boston police department, in particular, processing 911 emergency calls and exercising police dispatching functions.

[3]The arbitrator found that Gifford was paid at a lieutenant's rate of pay during his stint as acting day commander. The record does not indicate whether he sought the differential between his pay as a lieutenant and a captain's pay.

lieutenant's pay and a captain's pay for the period in issue,[4] the arbitrator stated, "I find that Galvin should have continued as day commander of the operations division until Captain Stapleton was transferred into the position in February 1995."[5] That decision purportedly was based on provisions in the parties' collective bargaining agreement requiring the city to follow civil service rules in making temporary appointments and a past practice of following a non-binding selection process to which practice there were "occasional exceptions."[6]

*The decision of the Superior Court.* Acting on the city's motion pursuant to G. L. c. 150C, § 11(*a*)(3), the judge vacated the arbitrator's award, holding that she exceeded her authority under G. L. c. 150C. He concluded that "the decision to replace Galvin with Gifford in the position of Day Commander is a nondelegable, discretionary prerogative of management and therefore, beyond the arbitrator's authority."

*Discussion.* The arbitrator awarded Galvin damages based on her conclusion that there had been a violation of the collective

[4]The differential of twenty-seven dollars a week was based on Article XIII, § 1, of the collective bargaining agreement which provides that: "An employee who is performing pursuant to assignment, temporary service in a rank higher than the rank in which he performs regular service, other than for the purpose of filling in for an employee on vacation, shall, commencing with the sixth consecutive day of service in such higher rank, be compensated for such service at the rate to which he would have been entitled had he been promoted to such rank."

[5]The arbitrator also concluded that Galvin prematurely had been removed from the acting day commander position in violation of a prior agreement settling his 1993 grievance. That agreement, not in our record, was stated by the arbitrator as providing for Galvin's pay at a captain's rate "until the date he ceases to work out of grade as a Captain in the Operations Division." That language does not convey any indication of an agreement to continue Galvin for any determinable period. We, therefore, view this conclusion of the arbitrator in the larger context of her decision respecting the collective bargaining agreement.

[6]Article XIII, § 2, of the agreement provided that "[w]hen there is an existing Civil Service list for a higher rank to be filled on a temporary basis, the selection of an employee to perform temporary service in such higher rank shall be made in accordance with Civil Service rules." It was stipulated that such a list existed. The arbitrator found that the city was not required to make temporary appointments under Civil Service Rule 15(1) (1978) (the rule of three), see *Flynn* v. *Civil Serv. Commn.*, 15 Mass. App. Ct. 206, 209 n.4 (1983), but that it was the general practice, with "occasional exception[s]," to follow the rule.

bargaining agreement. Because Galvin's grievance was decided after the permanent appointment of a captain as day commander, any issue of Galvin's reinstatement had been rendered moot. Nevertheless, the arbitral decision was not an award compensating Galvin for pay to which he was entitled for temporary out-of-rank service actually performed, but, rather, a decision as to the propriety of the assignment of Gifford to replace Galvin, rendered in the form of compensating Galvin for work not performed. Contrast *Somerville* v. *Somerville Mun. Employees Assn.*, 20 Mass. App. Ct. 594, 599 (1985). So viewed, the award impermissibly intruded on the police commissioner's discretion to make and end the temporary assignments at issue. "The fact that the city agreed to arbitrate the grievance is of no legal consequence if the issue is beyond the authority of the arbitrator." *Boston* v. *Boston Police Patrolmen's Assn., Inc.*, 41 Mass. App. Ct. 269, 270 n.3 (1996).

"[C]ontrol of the government, administration, [and] disposition . . . of the police force" and specific authority to "appoint . . . captains and other officers" is conferred on the police commissioner of the city of Boston by St. 1906, c. 291, as amended by St. 1962, c. 322. This special legislation has been recognized as establishing "that the deployment of officer personnel . . . is a fundamental and customary prerogative of municipal management . . . ." *Id.* at 272, and cases cited. In a decision that controls this case, we held "that assignment by the commissioner of a police officer for temporary duty is a decision committed to the nondelegable authority of the commissioner, and was not a proper matter for arbitration." *Boston* v. *Boston Police Superior Officers Fedn.*, 9 Mass. App. Ct. 898, 899 (1980). This is consistent with the general proposition that the commissioner's decisions relating to officer assignments were "beyond an arbitrator's authority." *Boston* v. *Boston Police Patrolmen's Assn.*, 403 Mass. 680, 684 (1989). While the award before us is couched in terms of a pay differential, we are not here confronted with an arbitrable subterfuge to avoid paying captain's wages during the time that captain's work is performed. Contrast *Boston* v. *Boston Police Superior Officers Fedn.*, 29 Mass. App. Ct. 907, 908-909 (1990) (rotation of sergeants every five days to avoid paying them higher pay on

the sixth day of a temporary assignment to a position customarily filled by a lieutenant, as required by collective bargaining agreement, was a classic compensation issue and, therefore, arbitrable).

As of January 22, 1996, the date of the arbitrator's award, the aforementioned special legislation empowering the police commissioner was not listed in G. L. c. 150E, § 7(*d*), and therefore did not yield to the provisions of the parties' collective bargaining agreement. The Federation points to the amendment of § 7(*d*) in 1998, see St. 1998, c. 9,[7] adding the regulations "of a police commissioner" to the list of subjects over which the terms of a collective bargaining agreement shall prevail as a "beacon of declared legislative purpose." It claims that the amendment indicates "a clear intent to favor the enforcement of contract terms over the conflicting directives" of the commissioner. Even if this amendment might be of theoretical relevance to the issues presented in this case, and we do not address whether it is, it cannot be applied here, absent any indication that the legislation was intended to have retrospective effect. See *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 318-321 (1993).

The Federation does not claim, and the record does not indicate, that the assignments at issue constitute abusive or punitive exercise of a management prerogative. We also are not presented with arbitrable provisions governing the procedure to be followed by the employer prior to deciding whom to assign to a temporary position. See *Lynn* v. *Labor Relations Commn.*, 43 Mass. App. Ct. 172, 179 (1997). Even if the assignments did not implicate "[d]ecisions . . . in the zone of managerial authority [that] are nondelegable," *Boston* v. *Boston Police Superior Officers Fedn.*, 29 Mass. App. Ct. at 908, the parties' collective bargaining agreement does not support the arbitrator's award. That agreement reserves to the city all "regular and customary" management prerogatives and prohibits an arbitrator from making a decision that modifies or abridges those prerogatives.

---

[7]Statute 1998, c. 9, inserted in the introductory clause of § 7(*d*) the words "or of a police commissioner or other head of a police or public safety department of a municipality" following the reference to the regulations of a police chief.

This court has recognized that similar language in a management rights clause in the city's agreement with its police patrolmen referred to the "long-standing and overriding authority" of the police commissioner. *Boston* v. *Boston Police Patrolmen's Assn.*, 41 Mass. App. Ct. at 272. The agreement's reference to the civil service system has similar effect. The police commissioner, as appointing authority for the city, may make temporary appointments pursuant to §§ 7 and 8 of the civil service statute (G. L. c. 31), and the parties' agreement governing its grievance procedure precludes arbitration with respect to "[a]ny matter which is subject to the jurisdiction of the Civil Service Commission."

The governing principle is that "[p]recluded from collective bargaining . . . [are] decisions concerning deployment . . . of police officers." *Lynn* v. *Labor Relations Commn.*, *supra* at 178-179. The assignment of police officers to so critical an operation as the communications center of the Boston police department undoubtedly is a function which "by statute, by tradition, or by common sense must be reserved to the sole discretion of the public employer." *Id.* at 178.

*Judgment affirmed.*