Connolly, J.
The plaintiff, Town of Saugus, moves to vacate an arbitration award rendered in the defendant’s favor under the provisions of ch. 150c, §11. A hearing was held before the Court on August 17, 2004. For the reasons stated below, the plaintiffs Application to Vacate an Arbitration Award is Allowed and the arbitration award is ordered VACATED.
PROCEDURAL BACKGROUND
This case arises out of a grievance filed by the Saugus Police Superior Officers Association against the Town of Saugus, which grievance was arbitrated and resulted in an Arbitration Award dated June 18, 2004. Said Award was received by the plaintiff on June 22, 2004.
The Town of Saugus timely filed this Complaint and Application on July 21, 2004 seeking to vacate the Arbitrator’s Award, and the defendant has filed its answer to the complaint.
FACTUAL BACKGROUND
There is a collective bargaining agreement, (“CBA”) in existence between the parties, which became effective on July 1, 1999, and was in effect at all times relevant to this dispute.
The Town of Saugus, by its town meeting prior to the start of fiscal year 2004, appropriated funds sufficient to staff the police department with thirteen superior officers. Superior Officer is defined in Article I of the CBA as Sergeants, Lieutenants, Captains, Deputy Chief, or any other titles that is created by the town as a supervisory position in the Police Department. The Chief had asked the Town Meeting to appropriate funds to staff sixteen superior officer positions.[1]
Article XIII, Section 4 of the CBA provides that all overtime shall be on a strictly voluntary basis only, except in the emergencies as declared by the Chief. After the commencement of fiscal 2004, some of the police department shifts (there being three per day) were being staffed without a superior officer. Although superior officers were assigned to those shifts, those superior officers did not report for various reasons, such as sickness. The Department, without objection from the defendants, attempted to fill the absent superior officer slots on a volunteer basis, but were not always successful in doing so. While it did not appear problematic to get a volunteer superior officer to serve on the day or evening shifts, the late-night to early-morning shift did become a problem from time to time. In the event that a volunteer was not available, the only other alternative was for the Chief to designate a patrolman to be the “shift commander” for that shift.
Chief of Police James Mackey did not believe that such an arrangement (designating a patrolman to be “shift commander” for that shift) was in the interest of public safety. Chief Mackey testified at the grievance hearing that “it was an emergency situation for the department to operate without at least one supervisor assigned to a shift . . . there are major events and decisions that need to be made that impact public safely . . . and those decisions should be made by supervisors.” Complaint, App 2 at 119-21. Further, the Chief testified that:
Its all too often we have to deal with serious events here in town and many serious events in which we have to call for assistance from other towns i.e., mutual aid. A lot of difficult and serious decisions that require decisions to be made and these are decisions that should be made by supervisors who have been trained . . . these are not decisions that should be made by patrolmen.
Id. at 117.
*268 The Chief of Police therefore directed that if both superior officers scheduled for a shift did not report to work and the department was unable to locate a member of the bargaining unit to work the shift voluntarily via the voluntary overtime list, he would order a superior officer to work the shift on overtime.[2]
The defendant, Saugus Police Superior Officers took the position that the CBA providéd for nonvoluntary overtime only when the Chief declared an emergency condition to exist and that under the CBA the Chief was unable to justify his order based on declaring “an emergency” every time the Department was .unable to have a superior officer serve on a shift. The defendant filed a grievance, and after going to arbitration prevailed.[3] The Town of Saugus in turn filed this Application to Vacate the Arbitration Award and this matter then came on for hearing.
JUDICIAL REVIEW OF ARBITRATION AWARDS
It is well established that judicial review of arbitration awards under ch. 150c is extremely narrow. Section 11 of the statute provides that, absent fraud, corruption or certain procedural irregularities ... the Superior Court, on application of a party may vacate an award only if the arbitrator has exceeded his powers. Neither error of fact nor error of law provides grounds for vacating an award . . . this policy of limited judicial review is reflective of the strong public policy favoring arbitration . . .
However, arbitration . . . may not award relief of a nature which offends public policy or which directs or requires a result contrary to express statutory provisions . . . Such an award is beyond the arbitrator’s powers and therefore must be vacated under ch. 150c, §11(a)(3).
School District of Beverly v. Geller, 50 Mass.App.Ct. 290, 293-94 (2000).
STATUTORY FRAMEWORK OF THE CHIEF OF POLICE’S AUTHORITY
There basically are three statutes that come into play in the discussion of the issues presented. Ch. 41, §97A as cited and quoted in footnote #1 above. Ch. 150c, §11(a)(3) provides that “upon application of a party, the superior court shall vacate an award if: . . . (3) the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law.”
Ch. 150E, §7(d) provides that “if a collective bargaining agreement reached by the employer and the exclusive representative contains a conflict between matters which are within the scope of negotiations pursuant to section six of this chapter and any . . . regulations of a chief of police pursuant to section 97A of ch. 41, . . . the terms of the collective bargaining agreement shall prevail.”
The crucial issue for decision in this matter is whether the arbitrator’s decision exceeded his powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law. Or, as otherwise stated, does ch. 41, §97A prohibit the arbitration of the Chief of Police’s powers to assign his officers to their respective duties?
DISCUSSION
As noted in footnote #4 above, the Arbitrator refused to consider the issue of whether the law prohibited the arbitration of nonvoluntaiy overtime for the senior officers. The Arbitrator merely attempted to deal with the question as follows: “Does the directive, dated November 19, 2003, from Chief James Mackay requiring in certain circumstances mandatory overtime, violate the contract?” The Arbitrator put the “cart before the horse.” The Arbitrator did not deal with the first primary question, namely whether assignment of supervision officers to mandatory overtime is a proper subject matter of a CBA, and hence arbitration.
Ch. 41, §97A the “strong chief statute,” has repeatedly been held to represent a broad grant of power and that a police chiefs authority under the section to assign and control his officers may not be limited by a collective bargaining agreement. Chief of Police of Dracut v. Town of Dracut, 357 Mass. 492, 502 (1970). In Town of Andover v. Andover Police Patrolmen’s Union, 45 Mass.App.Ct. 167, 168 (1998), the Court upheld the exclusive managerial prerogative of the Police Chief over the deployment of police officers on an overtime basis, when in his judgment, the public safety so requires.
In making assignments, the Chief must exercise his own discretion and judgment as to the number, qualifications and identity of officers needed for particular situations at any given time. He clearly has been given that authority by §97A... to deprive the Chief of his authority to assign his officers to their respective duties and to substitute therefore the provisions of the agreement which would be totally subversive of the discipline and efficiency which is indispensable to a public law enforcement agency.
Chief of Police of Dracut, supra, at 502.
The Court also must take into consideration the amendment to ch. 150E, §7(d), as amended by the Legislature through Chapter 9 of the Acts of 1998, which deals with a situation if there is a conflict between a collective bargaining agreement reached by the employer and the exclusive representative “concerning matters that are within the scope of negotiations pursuant to section six of this chapter and . . . regulations of a police chief pursuant to section 97A of chapter 41 . . . the terms of the Collective Bargaining Agreement shall prevail.” This raises again the issue of even if the Town of Saugus voluntarily arbitrated the issue of mandatory versus volunteer overtime for superior officers, and if an agreement in the CBA is reached on the issue, does the agreement bind the Town if the subject matter of the agreement was not legally subject to arbitration. The answer is set out *269 in Boston v. Boston Police Patrolmen’s Ass’n, 41 Mass.App.Ct. 269, 273 (1996), wherein it states, “An agreement to arbitrate a dispute which lawfully cannot be the subject of arbitration is equivalent to the absence of a controversy covered by the provision for arbitration.” Therefore the article of the agreement which deals with the issue of no mandatory overtime for superior officers is null and void as to all superior officers of the Saugus Police Department.[4] Or, as stated simply in Town of Andover v. Andover Police Patrolmen’s Union, 45 Mass.App.Ct. 167, 170 (1998):
[N]othing in Section 7(d) purports to displace the general authority vested in a police chief by §97A to order his officers to a mandatory overtime deployment when in his judgment, the public safety so requires.
The issue of whether a condition is an emergency or not has no bearing on this issue and is of no significance to this issue.
ORDER
The plaintiff, Town of Saugus’s Application to Vacate an Arbitration Award under ch. 150c, §11 is ALLOWED and the Arbitrator’s Award is ordered VACATED.

As will be seen below, this decision of the town meeting is the prime cause of this grievance and has the Chief of Police in a difficult position to perform his duties. E.g. “The Chief of Police in any such town shall be in immediate control... of the police officers, whom he shall assign to their respective duties and who shall obey his orders.” Ch. 41, §97A.

At the hearing held on the grievance on June 18, 2004, it was represented that from January 2003 to the date of the hearing (i.e. approximately one and one-half years), there had been only twelve to fourteen shifts which have been the subject of a nonvoluntary order to work by the Chief of Police to a Superior Officer.

 Specifically the Arbitrator decision was:
For the reasons specified above, the contract must govern. The action of the Chief of Police in declaring an ongoing emergency whenever a position cannot be filled with a volunteer for the command post, thus requiring a superior officer to work on a mandatory basis — this directive violates the collective bargaining agreement.
The issue of whether involuntary overtime as ordered by the Chief of Police was subject to arbitration under ch. 41, Section 97A, was specifically not considered by the Arbitrator, as set out in his report. (See: Exhibit #1, page #1 to Exhibits to the Complaint and Application to Vacate an Arbitration Award under ch. 150c, §11.) Said issue was urged and argued by the Town of Saugus. The Arbitration proceeded without considering the issue. “The fact that the [Town] agreed to arbitrate the grievance is of no legal consequence if the issue is beyond the authority of the Arbitration." Boston v. Boston Superior Officers Ass’n, 403 Mass. 680, 684, n.5 (1990).

This order does not apply to the order or method of assignment or the wages paid for mandatory overtime, all of which is or may be subject to arbitration. However, any provision in the CBA prohibiting the Chief from requiring a Superior Officer to serve mandatory overtime is that which is null and void.