830    62 Mass. App. Ct. 830 (2005)

Sheriff of Middlesex County *v.* International Brotherhood of Correctional Officers, Local R1-193.

## SHERIFF OF MIDDLESEX COUNTY *vs.* INTERNATIONAL BROTHERHOOD OF CORRECTIONAL OFFICERS, LOCAL R1-193.

No. 04-P-44.

Middlesex. October 15, 2004. - January 28, 2005.

Present: PERRETTA, DOERFER, & MILLS, JJ.

*Arbitration,* Judicial review, Collective bargaining. *Sheriff. Labor,* Collective bargaining, Arbitration.

In a dispute in Superior Court in which a public employer (a sheriff) sought a stay of the arbitration proceedings that a union had initiated under its collective bargaining agreement over a grievance (specifically, the sheriff's actions in declining a union member's application for appointment as a deputy sheriff), the judge correctly determined that the appointment of a deputy by a sheriff under G. L. c. 37, § 3, was a nondelegable managerial prerogative and thus not subject to arbitration [831-833]; further, the judge correctly concluded that the union failed to demonstrate that the sheriff, in violation of the provisions of the collective bargaining agreement, had engaged in impermissible discrimination such as would trigger an exception to the nondelegability doctrine [833-834], or to demonstrate that the sheriff was bound by the collective bargaining agreement to follow any specific appointment procedures [834-835].

CIVIL ACTION commenced in the Superior Court Department on September 29, 2003.

An application to stay arbitration was heard by *Peter M. Lauriat,* J.

*Lawrence D. Humphrey* for the defendant.

*William W. Porter,* Assistant Attorney General, for the plaintiff.

DOERFER, J. In response to an invitation to all employees, Shane Cassidy, a correction officer employed by the sheriff of Middlesex County (sheriff), applied to the sheriff to be appointed as a deputy. Although he met all the posted requirements, his application was declined. It is undisputed that Cassidy is a member of the executive board of the International Brother-

62 Mass. App. Ct. 830 (2005)                                831

Sheriff of Middlesex County v. International Brotherhood of Correctional Officers, Local R1-193.

hood of Correctional Officers, Local R1-193 (union). Pursuing Cassidy's claim that he was discriminated against when his application was denied, the union initiated the grievance procedure set forth in the collective bargaining agreement (CBA) between the union and the sheriff, and filed a demand for arbitration on behalf of Cassidy with the American Arbitration Association.

The sheriff obtained a stay of the arbitration[1] in the Superior Court, which ruled that this dispute was not specifically covered by the CBA; that under G. L. c. 37, § 3, the sheriff had the exclusive authority to appoint deputy sheriffs; and that an arbitrator could not thus grant the relief sought by the union, namely to require the sheriff to appoint Cassidy as a deputy. The union appeals from the decision of the Superior Court.

*Discussion.* When the parties have agreed to submit a dispute to arbitration, the courts will generally enforce that agreement and decline to interfere with the arbitration process.[2] *Local No. 1710, Intl. Assn. of Fire Fighters, AFL-CIO* v. *Chicopee,* 430 Mass. 417, 421-422 (1999). In labor disputes between public employers and employees, however, where a statute confers upon the public employer a particular managerial power, an arbitrator is not permitted to direct the employer to exercise that power in a way that interferes with the discretion granted to the employer by statute. See *Berkshire Hills Regional Sch. Dist. Comm.* v. *Berkshire Hills Educ. Assn.,* 375 Mass. 522, 526-527 (1978) (where the subject of the proposed arbitration is within the employer's exclusive and nondelegable statutory authority, it is not a proper subject for collective bargaining or arbitration).

1. Under G. L. c. 37, § 3, a sheriff is vested with the discretion to appoint deputies[3] who have law enforcement powers, and are thus able to perform certain functions beyond those that can be exercised by correction officers or other employees of

---

[1]See G. L. c. 150C, § 2(*b*).

[2]The court will stay a claim for arbitration where "the claim sought to be arbitrated does not state a controversy covered by the provision for arbitration and disputes concerning the interpretation or application of the arbitration provision are not themselves made subject to arbitration." G. L. c. 150C, § 2(*b*). See *Berkshire Hills Regional Sch. Dist. Comm.* v. *Berkshire Hills Educ. Assoc.,* 375 Mass. 522, 530 (1978).

[3]"A sheriff may appoint deputies, who shall be sworn before performing any official act." G. L. c. 37, § 3.

the sheriff. See *Tedeschi* v. *Reardon*, 5 F. Supp. 2d 40, 42 n.3 (D. Mass. 1998) (noting that appointment as a deputy sheriff confers "general law enforcement powers" and that correction officers in Essex County must be sworn as deputy sheriffs to be eligible for street detail); *Commonwealth* v. *Howe*, 405 Mass. 332, 334 (1989) (finding that deputy sheriffs are common-law "peace officers" with the authority to make an arrest for a breach of the peace); *Commonwealth* v. *Baez*, 42 Mass. App. Ct. 565, 567, 569 n.6 (1997) (providing examples of statutes authorizing deputy sheriffs to serve criminal process and to make arrests in certain circumstances). Indeed, one of the reasons cited by Cassidy for wanting to be appointed as a deputy sheriff was so he could "expand both [his] job duties and [his] earning potential."

It does not appear that a correction officer needs to be a deputy sheriff or that the powers of a deputy sheriff would be exercised in carrying out the duties of a correction officer. By posting an invitation for correction officers to apply for the position of deputy, the sheriff, for all that appears, was simply offering an opportunity for correction officers to enhance their incomes by performing duties outside the scope of their duties as correction officers. Thus, the appointment of a deputy by the sheriff can be viewed as the equivalent of appointing someone to exercise police-type power, and this case is closely analogous to cases such as *Massachusetts Coalition of Police, Local 165, AFL-CIO* v. *Northborough*, 416 Mass. 252, 255 (1993) (holding that a board of selectmen's decision not to reappoint a police officer is a nondelegable and nonarbitrable managerial prerogative pursuant to G. L. c. 41, § 97A); *Selectmen of Ayer* v. *Sullivan*, 29 Mass. App. Ct. 931, 932 (1990) (holding nondelegable the right of the town's selectmen to appoint police officers under G. L. c. 41, § 96); *Boston* v. *Boston Police Patrolmen's Assn., Inc.*, 41 Mass. App. Ct. 269, 272 (1996) (discussing a broad "zone of managerial authority" statutorily reserved to the police commissioner[4] for purposes of "public safety and a disciplined police force [that] require managerial control over

---

[4]Pursuant to St. 1906, c. 291, §§ 10, 11, as amended by St. 1962, c. 322, § 1.

matters such as staffing levels, assignments, uniforms, weapons, definition of duties, and deployment of personnel").

2. Relying on its claim that the sheriff "discriminated" against Cassidy, the union argues that this case is controlled by *Blue Hills Regional Dist. Sch. Comm.* v. *Flight*, 383 Mass. 642, 644 (1981), which carves out an exception to the nondelegability doctrine in cases of constitutionally impermissible discrimination. In *Blue Hills Regional Dist. Sch. Comm.* v. *Flight*, 383 Mass. at 643, an arbitrator agreed with a female tenured teacher who claimed that the school committee had violated provisions of the CBA that expressly addressed procedures for promotions and required appointments to be made without regard to gender. The court held the grievance was arbitrable,[5] and created an exception to the nondelegability doctrine, confirming the arbitrator's remedy that required the teacher's promotion and stating that "[d]enial of promotion to a public employee because of her sex is constitutionally impermissible and violates statutory proscriptions, and makes appropriate an order granting the promotion with back pay." *Id.* at 644.

The present case falls outside of the impermissible discrimination exception. In *Massachusetts Coalition of Police, Local 165, AFL-CIO* v. *Northborough*, 416 Mass. at 257, the court stated in dictum that even if a claim of discrimination based on union activity had not been waived, an arbitrator could make no lawful award[6] to the grievant without conflicting with the town's nondelegable managerial authority to reappoint police officers.

---

[5]Unlike our decision in this case, the court in *Blue Hills Regional Dist. Sch. Comm.* v. *Flight*, 383 Mass. at 643, held the grievance arbitrable, apparently relying on the express provision of the CBA in that case. The court stated, "[t]he collective bargaining agreement provided explicitly that appointments would be made without regard to sex, and the Appeals Court properly held that a claim of violation of that provision was arbitrable under the agreement." *Ibid.*

[6]While it is clear that an arbitrator could not require the sheriff to appoint Cassidy or order damages that would have the indirect effect of compelling his appointment as deputy sheriff, on the facts of this case and the relevant CBA provisions, "no [other] lawful remedy could be granted without conflicting with the town's nondelegable managerial prerogative." *Massachusetts Coalition of Police, Local 165, AFL-CIO* v. *Northborough*, 416 Mass. at 257. See *Higher Educ. Coordinating Council* v. *Massachusetts Teachers Assn.*, 423

Cassidy's claim in this case invokes Article XIII of the CBA, which prohibits discrimination on the basis of constitutionally protected categories, such as race and gender, as well as union membership.[7] However there are no factual allegations anywhere in the record that refer to alleged discrimination based upon anything other than union membership. The union's reliance on Article XIII of the CBA is insufficient to trigger the exception to the nondelegability doctrine established in *Blue Hills Regional Dist. Sch. Comm.* v. *Flight*, 383 Mass. at 644.

3. While the sheriff may not surrender his statutory authority to make deputy appointments, the sheriff may enter into a binding agreement to follow certain procedures in making the appointments. See *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 113 (1977). Here, however, the sheriff was not bound by the CBA to follow any specific appointment procedures.[8] Indeed, the CBA does not address or even mention deputy sheriff appointments in any of its provisions. The union's sole claim is that the sheriff discriminated against Cassidy by failing to deputize him in violation of Article XIII of the CBA. Article XIII does not relate to deputy sheriff appointments. Instead, it sets forth a general policy against discrimination on the basis of union membership or with regard to "race, color, religious

Mass. 23, 33 (1996); *School Comm. of New Bedford* v. *New Bedford Educators Assn.*, 9 Mass. App. Ct. 793, 801-802 (1980).

[7]Article XIII, the nondiscrimination provision, provides: "Section One. The Employer and the Union agree that neither the Employer nor the Union, nor any representatives thereof, will discriminate in any way against employees covered by this [CBA] because of membership or non-membership in the Union. "Section Two. It is the continuing policy of the Employer and the Union that, as required by law, there shall be no discrimination with regard to race, color, religious belief, national origin, age, sex, and/or disability, except for where a bona fide occupational qualification exists."

[8]The cases relied upon by the union are distinguishable because in those cases, the CBA provisions allegedly violated contained specific procedures related to the particular grievance. See *School Comm. of Danvers* v. *Tyman*, 372 Mass. at 107 (CBA set forth procedures to evaluate the work performance of a teacher); *Blue Hills Regional Dist. Sch. Comm.* v. *Flight*, 383 Mass. at 643 (CBA explicitly provided that appointments would be made without regard to sex); *Higher Educ. Coordinating Council* v. *Massachusetts Teachers Assn.*, 423 Mass. at 24-26 (provisions specifically related to reassignment procedures); *School Comm. of New Bedford* v. *New Bedford Educators Assn.*, 9 Mass. App. Ct. at 794-795 (provisions related to procedures for filling vacancies).

belief, national origin, age, sex, and/or disability." Neither Article XIII nor any other provisions of the CBA support the stance that the sheriff bound himself to particular procedures relating to deputy sheriff appointments.[9] Claiming a violation of a general nondiscrimination provision is insufficient to find a procedural basis to reverse the stay of arbitration.[10]

*Judgment affirmed.*

---

[9]To the contrary, other CBA provisions appear to support the sheriff. For example, Article V expressly reserves to the employer "all of it's [*sic*] common law, *statutory* and inherent rights" (emphasis added). See Article V, section four, which explicitly excludes from arbitration grievances considered to be within the employer's rights, stating, "[a]ny dispute, complaint or controversy with respect to inherent Employer rights and those specifically set out herein, shall not be subject to the grievance-arbitration provisions of this Agreement or impairment by an arbitration award under this Agreement."

[10]To provide additional support for its claim that the grievance is governed by the CBA, the union argues that the arbitration clause is broad. Where a CBA contains a broad arbitration clause, disputes are generally subject to arbitration. See *Local No. 1710, Intl. Assn. of Fire Fighters, AFL-CIO* v. *Chicopee*, 430 Mass. at 422. In light of our decision, we do not review the union's argument regarding whether the arbitration clause found in section seven of Article V of the CBA is narrow or broad. We note, however, that while the union asserts that the Superior Court judge "erroneously isolated a single clause from a sentence of [s]ection [s]even" when making his decision, the union itself omits extensive limiting language found in that same section and thus fails to consider the arbitration provision's full context. See *Starr* v. *Fordham*, 420 Mass. 178, 190 (1995), quoting from *Commissioner of Corps. & Taxn.* v. *Chilton Club*, 318 Mass. 285, 288 (1945) ("the scope of a party's obligations cannot 'be delineated by isolating words and interpreting them as though they stood alone' "). For example, when the union reproduced an excerpt of section seven in its brief, it omitted the last sentence, which states, "[n]o such decision may include or deal with any issue or manner which is not expressly made subject to arbitration under the terms of this agreement." Since the issue of deputy sheriff appointments is not mentioned anywhere in the CBA, it cannot be the subject of an arbitration under the terms of section seven.