CITY OF BOSTON vs. BOSTON POLICE SUPERIOR OFFICERS
FEDERATION.

Suffolk. April 2, 2013. - August 9, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Boston. Police,* Assignment of duties, Collective bargaining. *Public Employ-
ment,* Police, Transfer, Collective bargaining. *Municipal Corporations,*
Police, Collective bargaining. *Labor,* Police, Collective bargaining. *Civil
Service,* Police, Collective bargaining. *Arbitration,* Collective bargaining,
Confirmation of award, Authority of arbitrator. *Contract,* Collective bargain-
ing contract.

A Superior Court judge erred in confirming an arbitration award of damages
and reinstatement to a police sergeant in the Boston police department who
had been transferred, where the assignment and transfer of officers within
the police department were nondelegable statutory powers of the police com-
missioner of Boston, and thus, the award was outside the arbitrator's author-
ity [214-216]; further, there was no merit to the claim that the city of Boston
had consented to a provision in the applicable collective bargaining agree-
ment purporting to delegate that nondelegable managerial authority [216].

CIVIL ACTION commenced in the Superior Court Department on
August 18, 2009.

The case was heard by *Bonnie H. MacLeod,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*David M. Connelly* (*Robert J. Boyle, Jr.,* with him) for the
plaintiff.

*Alfred Gordon* for the defendant.

DUFFLY, J. After the city of Boston (city) transferred a Boston
police sergeant who served as a union representative, the Boston
Police Superior Officers Federation (union) sought to enforce a
provision of its collective bargaining agreement with the city,
prohibiting the involuntary transfer of certain union representa-
tives between stations or assignments. Following binding arbitra-
tion mandated under the collective bargaining agreement, an

arbitrator found that the city had violated the collective bargaining agreement and awarded the officer damages and reinstatement to his original position. The city filed a motion in the Superior Court, pursuant to G. L. c. 150C, § 11, to vacate the award. A Superior Court judge denied the city's motion and allowed the union's cross motion to confirm the award. The city appealed, and we transferred the case to this court on our own motion.

The city argues, and we agree, that assignment and transfer of officers within the Boston police department (department) are nondelegable statutory powers of the Boston police commissioner (commissioner), see St. 1906, c. 291, § 10, as appearing in St. 1962, c. 322, § 1, and, accordingly, that the grievance arbitrator exceeded his authority in reversing the officer's transfer.

*Background and prior proceedings.* In 1989, the city and the union underwent interest arbitration[1] as part of a collective bargaining process. The city had proposed a provision that would have prohibited the involuntary transfer of union representatives, but the parties were unable to reach agreement on how many officers would be covered by that provision. The proposal followed several years of litigation over what the union alleged was the city's practice of antiunion transfers. In 1985, the city settled a Federal case involving allegations that the police commissioner used transfers to retaliate against certain superior officers for their union activities. That settlement agreement, as well as a 1987 agreement in a related case, stipulated that the city would not transfer current or former union representatives without their consent.[2] Following adoption of that settlement agreement, several disputes arose concerning whether the city had violated the agreement.

---

[1] " 'Interest' arbitration characterizes the arbitration of labor disputes that 'involve the question of what shall be the basic terms and conditions of employment.' " *School Comm. of Hanover* v. *Hanover Teachers Ass'n,* 435 Mass. 736, 738 n.2 (2002), quoting F. Elkouri & E. Elkouri, How Arbitration Works 128 (5th ed. 1997). See *School Comm. of Boston* v. *Boston Teachers Union, Local 66, Am. Fed'n of Teachers (AFL-CIO),* 372 Mass. 605, 606 n.4 (1977).

[2] Following the 1985 settlement agreement in the United States District Court for the District of Massachusetts, the Boston Police Superior Officers Federation (union) sought a judgment of contempt against the city of Boston (city) for violation of that agreement. The parties reached an agreement resolving the contempt action and, in 1987, signed a separate letter of agreement.

In a written opinion and award in which this history was discussed, the interest arbitrator ordered that the transfer provision at issue here, art. XVI, § 6A, be inserted in the collective bargaining agreement.[3] That provision, covering a specified number of union officers and area representatives, has remained unchanged in several successor contracts.

The grievance that gave rise to this appeal was filed in 2008. Pursuant to G. L. c. 150C, § 2 (b),[4] the city sought to stay arbitration of the grievance, on the ground that the transfer provision was invalid and thus could not be arbitrated. A Superior Court judge declined to issue a stay. In 2009, an arbitrator heard the grievance and determined that the issue was arbitrable.

We summarize the facts relevant to the grievance, based on the arbitrator's findings. See Lynn v. Thompson, 435 Mass. 54, 61 (2001), cert. denied, 534 U.S. 1131 (2002). Sergeant Ralph Caulfield is a Boston police officer who served as an area representative of the union at the D-14 police station in the

---

[3]Article XVI, § 6A, of the collective bargaining agreement provides:

"Federation officers and area representatives (not to exceed a total of 25 officers) shall not be transferred out of their unit, district, division or bureau, and shall not be reassigned nor detailed permanently from one platoon to another except upon their own request or in normal 42-day rotation of night men. No Federation member shall be transferred in retaliation for the exercise of the rights specific in Section 1 of this Article or the purpose of interfering with the structure of institutional life of the Federation. Specific reasons, in writing, for any transfer, detail or reassignment shall be given by the Police Commissioner or his delegate to an employee upon request within three (3) days of such request. Any dispute hereunder shall be subject to the Grievance and Arbitration Procedure."

[4]General Laws c. 150C, § 2 (b), provides:

"Upon application, the [S]uperior [C]ourt may stay an arbitration proceeding commenced or threatened if it finds (1) that there is no agreement to arbitrate, or (2) that the claim sought to be arbitrated does not state a controversy covered by the provision for arbitration and disputes concerning the interpretation or application of the arbitration provision are not themselves made subject to arbitration. . . ."

See Dennis-Yarmouth Regional Sch. Comm. v. Dennis Teachers Ass'n, 372 Mass. 116, 119 (1977) ("we regard an agreement to arbitrate a dispute which lawfully cannot be the subject of arbitration as equivalent to the absence of a controversy covered by the provision for arbitration").

Brighton section of Boston. In January, 2007, Caulfield and another sergeant were involved in a physical fight in the duty supervisor room, during which Caulfield punched the other officer in the face. The station captain suspended the other officer, but did not suspend or otherwise discipline Caulfield. Although the two men did not work on the same shift, as supervisors they were required to interact and to exchange information during shift changes. The other officer said that an underlying tension remained between the two. The station captain and the chief of field services for the department agreed that Caulfied's effectiveness as a supervisor had been compromised, and discussed transferring him. A transfer order was issued in June, 2007, but was quickly rescinded, and Caulfield was placed on medical leave until September 14, 2007, when he returned to the D-14 station. In February, 2008, he was transferred due to what the city said were ongoing concerns about his supervisory authority. The union then filed a grievance on his behalf.

The arbitrator issued an award invalidating the transfer and granting Caulfield damages and the opportunity to return to his original station assignment. The city filed a motion in the Superior Court to vacate the arbitrator's award, and the union filed a cross motion to confirm the award. A second Superior Court judge denied the city's motion to vacate the award, and granted the union's motion confirming the award. The judge concluded that the so-called "police commissioner's statute," St. 1906, c. 291, §§ 10, 11, as appearing in St. 1962, c. 322, § 1, was silent on the issue of transfer, and thus that the Legislature did not intend to create a nondelegable authority in the police commissioner to transfer personnel.

*Discussion.* When an arbitrator makes a binding award pursuant to a collective bargaining agreement, a Superior Court judge may vacate or alter the award if, inter alia, it was procured by "corruption, fraud or other undue means," the arbitrator was evidently corrupt or partial, or "the arbitrator[] exceeded [his or her] powers." G. L. c. 150C, § 11. The city argues that the transfer provision at issue impermissibly delegates the commissioner's statutory power to assign and organize officers, and thus that the award was outside the arbitrator's authority. The union contends that the transfer provision is valid, and arbitrable,

because the city consented to its inclusion in the collective bargaining agreement. We conclude that the city is correct and that the award must be vacated.

a. *Nondelegable powers of commissioner.* The commissioner's powers are statutorily defined. The commissioner has "authority to appoint, establish and organize the [Boston] police" department, St. 1906, c. 291, § 10, as appearing in St. 1962, c. 322, § 1, and has "cognizance and control of the government, administration, disposition and discipline of the department, and of the police force of the department and shall make all needful rules and regulations for the efficiency of said police." St. 1906, c. 291, § 11, as appearing in St. 1962, c. 322, § 1.

As an initial matter, we must determine whether these statutory provisions confer on the commissioner an exclusive, nondelegable authority to assign and transfer police officers. See generally *Department of State Police* v. *Massachusetts Org. of State Eng'rs & Scientists*, 456 Mass. 450, 455 (2010).[5] Analysis of whether a legislative grant of "general management powers" to a public official or body creates a nondelegable authority "has been directed towards defining the boundary between subjects that by statute, by tradition, or by common sense must be reserved to the sole discretion of the public employer so as to preserve the intended role of the governmental agency and its accountability in the political process."[6] *Lynn* v. *Labor Relations Comm'n*, 43 Mass. App. Ct. 172, 178 (1997). See *Chief Justice for Admin. & Mgt. of the Trial Court* v. *Commonwealth Employment Relations Bd.*, 79 Mass. App. Ct. 374, 381 (2011), citing *School Comm. of Boston* v. *Boston Teachers Union, Local*

---

[5]"[W]hile an underlying decision may be reserved to the exclusive prerogative of the public employer . . . , the public employer may be required to arbitrate with respect to ancillary matters, such as procedures that the employer has agreed to follow prior to making the decision." *Somerville* v. *Somerville Mun. Employees Ass'n*, 451 Mass. 493, 499 (2008), quoting *Lynn* v. *Labor Relations Comm'n*, 43 Mass. App. Ct. 172, 179 (1997). The transfer provision at issue here does not concern such ancillary matters but, rather, the commissioner's authority to transfer officers.

[6]Characterizing a decision as suitable for collective bargaining "can be difficult because many decisions of the public employer include both a managerial function and an effect upon the terms and conditions of the employees' work." *Chief Justice for Admin. & Mgt. of the Trial Court* v. *Commonwealth Employment Relations Bd.*, 79 Mass. App. Ct. 374, 381 (2011).

*66, Am. Fed'n of Teachers (AFL-CIO)*, 378 Mass. 65, 71 & n.13 (1979) ("One purpose of the principle is the retention of public policy making in the hands of governmental employers accountable directly or indirectly through 'the normal political process,' and the prevention of the devolution of policy making to the narrower perspective and accountability of interest group bargaining").

Although the statutory language does not contain the word "transfer," the statutory provision defining the commissioner's authority, by its plain language, confers nondelegable authority over the assignment and organization of the officers within the department. Pursuant to St. 1906, c. 291, §§ 10 and 11, as appearing in St. 1962, c. 322, § 1, "[t]he commissioner's authority . . . has been recognized to be broad." *Boston v. Boston Police Patrolmen's Ass'n*, 403 Mass. 680, 684 (1989). See *Boston v. Boston Police Superior Officers Fed'n*, 29 Mass. App. Ct. 907, 908 (1990), and cases cited (St. 1906, c. 291, §§ 10, 11, and 14, as appearing in St. 1962, c. 322, § 1, confers "broad administrative control and discretion of the police commissioner of Boston").

> "[C]onsiderations of public safety and a disciplined police force require managerial control over matters such as staffing levels, assignments, uniforms, weapons, definition of duties, and deployment of personnel. . . . [T]he deployment of officer personnel to meet the tasks and responsibilities of the department is a fundamental and customary prerogative of municipal management which falls squarely within [St. 1906, c. 291, § 11] . . . ."

*Boston v. Boston Police Patrolmen's Ass'n*, 41 Mass. App. Ct. 269, 272 (1996). See, e.g., *Boston v. Boston Police Patrolmen's Ass'n*, 403 Mass. at 684 (assignment of one patrol officer to marked patrol vehicle instead of two officers per vehicle was made pursuant to nondelegable authority); *Boston v. Boston Police Superior Officers Fed'n*, 52 Mass. App. Ct. 296, 299 (2001) (assignment of officer to temporary duties is nondelegable authority).

There is therefore no basis to conclude that a "transfer" of an officer falls outside the scope of the commissioner's power to "appoint, establish and organize." An assignment or deploy-

ment cannot be irrevocable, or managers would have no ability to react to changing conditions in arranging the police force into the necessary bureaus, units, and divisions.[7]

b. *City's consent to provision.* The union argues that, even if art. XVI, § 6A, purports to delegate the commissioner's non-delegable managerial authority, it should nevertheless be binding on the city because the city consented to the provision. Furthermore, the union maintains, the city has not sought to excise the provision from several successor contracts. Regardless of whether the city's consent to art. XVI, § 6A, may be gleaned from the fraught history between the parties, a nondelegable authority may not be delegated to an arbitrator, even with the parties' consent. See, e.g., *Department of State Police* v. *Massachusetts Org. of State Eng'rs & Scientists*, *supra* at 457 (holding dispute under collective bargaining agreement not arbitrable as delegation of nondelegable authority, without reference to whether provision was consented to by parties). Cf. *Boston* v. *Boston Police Patrolmen's Ass'n*, 41 Mass. App. Ct. at 270 n.3 ("The fact that the city agreed to arbitrate the grievance is of no legal consequence if the issue is beyond the authority of the arbitrator").[8]

*Conclusion.* Because the grievance arbitrator exceeded his

---

[7]The union does not claim that the transfer at issue here constituted improper retaliation for protected union activity, nor does it argue that it would have had no other avenue by which to seek redress had the transfer been retaliatory. See, e.g., G. L. c. 150E, § 10 (prohibited practice for public employer to "[d]iscriminate in regard to hiring, tenure, or any term or condition of employment to encourage or discourage membership in any employee organization"); 29 U.S.C. § 158(a)(3) (2006) (making it an unfair labor practice under Federal law to discriminate "in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization").

[8]Consent could have been relevant to the question whether the interest arbitrator exceeded his statutory authority when he inserted art. XVI, § 6A, into the collective bargaining agreement. See St. 1973, c. 1078, § 4A (1) (*a*) (i), (2) (*a*), as appearing in St. 1987, c. 589, § 1 (creating joint labor-management committee to oversee collective bargaining processes for municipal police and firefighters). Pursuant to that statute, parties may be ordered to undertake arbitration to resolve outstanding issues; the scope of such arbitration, which is binding, "shall be limited to wages, hours, and conditions of employment and shall not include the following matters of inherent managerial policy: the right to appoint, promote, assign, and transfer employees . . . ." St. 1973, c. 1078, § 4A (3) (*a*), as appearing in St. 1987, c. 589, § 1. The city argues that art. XVI, § 6A, is

authority in invalidating the officer's transfer, the arbitration award cannot stand. The judgment affirming the grant of the arbitration award is vacated and set aside. The matter is remanded to the Superior Court, where judgment shall enter for the city on its motion to vacate the award.

*So ordered.*

---

invalid because the interest arbitrator exceeded this scope. However, it appears from the record that the provision in question was in substance agreed to by the parties, with the only controversy for the interest arbitrator involving the number of union officers to be covered by the provision.