DITKOFF, J.
*537 The town of Framingham[1] appeals from a Superior Court order denying its motion for a preliminary injunction against the arbitration of a police officer's transfer to the patrol division. We conclude that the transfer and assignment of police officers is within the exclusive managerial authority of the police chief as a *538 matter of public safety pursuant to G. L. c. 41, § 97A, and may not be delegated or contravened through arbitration or collective bargaining. This is so even where it is claimed that the transfer or assignment was motivated by the police chief's perception of the officer's misconduct. Furthermore, we conclude that a municipality seeking to enforce its statutory rights to exclusive managerial authority need not show irreparable harm to be entitled to a preliminary injunction. Accordingly, we reverse the order denying the preliminary injunction.
1. Background. Officer Matthew Gutwill is a police officer in the Framingham police department (department) and a member of the Framingham Police Officers Union (union). The terms of Officer Gutwill's employment are governed by the collective bargaining agreement (CBA) entered into by the union and Framingham on May 12, 2016.
In 2004, Officer Gutwill began working for the department in the patrol division and was then transferred to the detective bureau, where he served from 2006 to 2008. In Framingham, an assignment to the detective bureau does not confer the rank of detective in the department. It is a specialty assignment distinguished from the patrol division based on the position's role and job requirements, rather than senior employment status within the department. As a detective, Officer Gutwill received a weekly stipend and a more flexible schedule.
In 2008, Officer Gutwill was assigned to work as a detective with a Federal Drug Enforcement Agency (DEA) task force. The assignment was consecutively renewed through 2015 but was at all times *1108 temporary, made at the sole discretion of the police chief with the express reservation of managerial authority to transfer or to reassign Officer Gutwill at any time.[2] While working full time and under the operational command of the DEA, Officer Gutwill remained employed by the department and continued to receive his detective stipend. He also enjoyed an increased differential pay rate for nighttime work and additional overtime compensation.
On September 22, 2015, Officer Gutwill lodged a complaint with the department, alleging misconduct against another detective *539 in the department. The complaint triggered a four-month internal investigation, and Officer Gutwill was displeased with its result. Officer Gutwill also claimed that he was subjected to workplace harassment by members of the department in retaliation for making allegations against a fellow detective.
In January, 2016, he was informed that the department intended to rotate him out of the DEA task force at an undetermined date to an undetermined position. The department maintains that the transfer was dictated by sound risk management policy to provide opportunities for other officers, to allow rotated officers to share specialized knowledge and experience within the department, and to reduce entrenchment and other concerns associated with so-called "high risk positions." Officer Gutwill, by contrast, suspected the reassignment was made in retaliation for his initial and ongoing complaints.
Officer Gutwill sought to air his concerns to the police chief in a February 5, 2016, telephone call. During the conversation, Officer Gutwill allegedly made several inflammatory statements to the police chief. Officer Gutwill claimed that a deputy chief lied while testifying in a criminal case, and that another deputy chief was implicated in other misconduct through a Federal wiretap recording. Officer Gutwill also expressed that he was unable to work with fellow detectives as a result of what he believed was retaliatory harassment, and that his complaints were being ignored by the department. Based on these claims, Officer Gutwill told the police chief that he planned to file a complaint with the Massachusetts Commission Against Discrimination, and stated something to the effect that he would "turn the place upside down."
In response, the department retained an attorney on February 16, 2016, to conduct an independent investigation of Officer Gutwill's accusations. The investigation commenced on March 1, 2016, and continued through July, 2016, during which time Officer Gutwill's reassignment was delayed pending the outcome of the investigation. After substantial inquiry, the investigator issued a report dated July 14, 2016, determining that the allegations of retaliation were without merit. Despite the absence of any suggestion in the investigator's report that Officer Gutwill was dishonest,[3] the police chief accused Officer Gutwill of denying to the investigator that he made *1109 various statements in the February *540 5, 2016, telephone call.
Based on the police chief's accusations, Officer Gutwill was placed on paid administrative leave on August 19, 2016, through December 12, 2016, when he was suspended for five days without pay.[4] According to the department, the suspension resulted from violations of rules prohibiting "untruthfulness" concerning Officer Gutwill's denial of the statements made to the police chief on February 5, 2016.
When Officer Gutwill returned to duty on December 19, 2016, after his suspension, he was reassigned from the detective bureau to the patrol division. The department cited "a variety of reasons" for the transfer, "including an independent investigator's finding that he was untruthful during an official investigation," in determining "that it was in the [d]epartment's best interest to assign him to the [p]atrol [d]ivision." Officer Gutwill immediately challenged the decision in a verbal grievance, which was denied by the police chief.[5]
The union responded by submitting a written grievance on behalf of Officer Gutwill on December 21, 2016, alleging that his reassignment from the detective bureau to the patrol division constituted "discipline" without "just cause," in violation of the CBA. The union requested the immediate reinstatement of Officer Gutwill to the detective bureau. The department denied this grievance on the ground that the Legislature had declared that the assignments of police officers is "an exclusive managerial prerogative" not subject to collective bargaining. The Framingham town manager upheld the denial. Pursuant to the CBA, the union filed a demand for arbitration on January 17, 2017, on behalf of Officer Gutwill.
*541 On March 2, 2017, Framingham filed a civil complaint and moved for a preliminary injunction enjoining arbitration, which was duly opposed by the union. After a hearing, a Superior Court judge (motion judge) denied the preliminary injunction in a decision entered June 28, 2017.[6] We have jurisdiction over Framingham's interlocutory appeal pursuant to G. L. c. 231, § 118.[7] See *1110 Massachusetts Correction Officers Federated Union v. Bristol, 64 Mass. App. Ct. 461, 464, 833 N.E.2d 1182 (2005) ; DeCroteau v. DeCroteau, 90 Mass. App. Ct. 903, 903, 65 N.E.3d 1217 (2016).
2. Standard of review. "We review the grant or denial of a preliminary injunction for abuse of discretion." Eaton v. Federal Natl. Mort. Assn., 462 Mass. 569, 574, 969 N.E.2d 1118 (2012). In doing so, we determine "whether the judge applied proper legal standards and whether there was reasonable support for his evaluation of factual questions." Doe v. Superintendent of Schs. of Weston, 461 Mass. 159, 164, 959 N.E.2d 403 (2011), quoting from Commonwealth v. Fremont Inv. & Loan, 452 Mass. 733, 741, 897 N.E.2d 548 (2008). "The trial court's legal conclusions, however, are 'subject to broad review and will be reversed if incorrect.' " LeClair v. Norwell, 430 Mass. 328, 331, 719 N.E.2d 464 (1999), quoting from Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616, 405 N.E.2d 106 (1980).
3. Standard for preliminary injunction. "When a private party seeks a preliminary injunction, the moving party is required to show that an irreparable injury would occur without immediate injunctive relief." LeClair, 430 Mass. at 331, 719 N.E.2d 464, citing Cheney, 380 Mass. at 617, 405 N.E.2d 106. "When, however, a suit is brought either by the government or a citizen acting as a private attorney general to enforce a statute or a declared policy of the Legislature irreparable harm is not required." LeClair, supra, citing Edwards v. Boston, 408 Mass. 643, 646-647, 562 N.E.2d 834 (1990). Rather, the equitable considerations justifying the need for injunctive relief are supplied *542 by showing that an injunction is in the public interest. See Caplan v. Acton, 479 Mass. 69, 75, 92 N.E.3d 691 (2018). Thus, because Framingham brought this suit as a government plaintiff, seeking a preliminary injunction to enforce its rights under G. L. c. 41, § 97A, and G. L. c. 150C, § 2(b ), it must only "show a likelihood of success on the merits and that the requested relief would be in the public interest." Caplan, supra, citing LeClair, supra at 331-332, 719 N.E.2d 464. Accord Commonwealth v. Mass. CRINC, 392 Mass. 79, 89, 466 N.E.2d 792 (1984).
The motion judge, while assuming that Framingham had demonstrated a likelihood of success on the merits, denied Framingham's request to enjoin arbitration on the basis that it had failed to demonstrate irreparable harm. Framingham, however, repeatedly asserted that arbitration would violate G. L. c. 41, § 97A, which (Framingham argued) makes the assignment of police officers a nondelegable, inherent managerial right. At least regarding Framingham's arguments under § 97A, Framingham was seeking to enforce a statute and a declared policy of the Commonwealth and did not need to show irreparable harm.
Accordingly, to determine whether a preliminary injunction should have issued, we must assess (1) Framingham's likelihood of success on the merits in showing that the grieved transfer and reassignment of Officer Gutwill by the police chief is not an arbitrable issue and (2) whether prohibiting arbitration of that issue is in the public interest. See Caplan, 479 Mass. at 75, 92 N.E.3d 691.
4. Success on the merits: arbitrability of police officer transfer and reassignment. "There are certain nondelegable rights of management, matters that are not mandatory subjects of collective bargaining ..., that a municipality and its agents may not abandon by agreement, and that an arbitrator may not contravene."
*1111 Billerica v. International Assn. of Firefighters, Local 1495, 415 Mass. 692, 694, 615 N.E.2d 564 (1993). General Laws c. 41, § 97A, as appearing in St. 1948, c. 595, vests the "chief of police" (in municipalities, like Framingham, that have accepted § 97A ) with authority to "be in immediate control ... of the police officers, whom [the police chief] shall assign to their respective duties" (emphasis supplied). See Andover v. Andover Police Patrolmen's Union, 45 Mass. App. Ct. 167, 169-170, 696 N.E.2d 161 (1998). Even in the absence of express legislative language, police chiefs are inherently vested with general managerial authority over employees "where matters of public safety are concerned." Saugus v. Saugus Pub. Safety Dispatchers Union, 65 Mass. App. Ct. 901, 902, 839 N.E.2d 860 (2005).
*543 "A police chief's authority to assign his officers to particular duties is a matter that concerns the public safety." Taunton v. Taunton Branch of the Mass. Police Assn., 10 Mass. App. Ct. 237, 243, 406 N.E.2d 1298 (1980). Moreover, "[t]he protection of a public employer's management prerogative is particularly strong where, as here, the prerogative concerns policy judgments in the allocation and deployment of law enforcement resources" (emphasis supplied). Saugus Pub. Safety Dispatchers Union, 65 Mass. App. Ct. at 901-902, 839 N.E.2d 860. That power, as a result, may not be delegated to arbitrators pursuant to CBAs or, for that matter, subject to collective bargaining at all. Saugus v. Saugus Police Superior Officers Union, 64 Mass. App. Ct. 916, 916-917, 835 N.E.2d 276 (2005) (police chief's involuntary assignment of officers to overtime shifts, required for public safety, "was within the exclusive managerial prerogative of the chief and, hence, not subject to being bargained away by the town, and not arbitrable"). See Worcester v. Labor Relations Commn., 438 Mass. 177, 182, 779 N.E.2d 630 (2002), quoting from Lynn v. Labor Relations Commn., 43 Mass. App. Ct. 172, 178, 681 N.E.2d 1234 (1997) ("The allocation of resources among competing law enforcement priorities 'must be reserved to the sole discretion of the public employer ....' Those priorities are not a proper subject of bargaining"). Cf. Chief Justice for Admin. & Mgmt. of the Trial Ct. v. Commonwealth Employment Relations Bd., 79 Mass. App. Ct. 374, 388, 946 N.E.2d 704 (2011) ("The determination of proper security for the Commonwealth's trial courtrooms is not a collectively bargainable subject").
It follows that the police chief's decision in this case to transfer and reassign Officer Gutwill from the detective bureau to the patrol division was neither subject to the parties' CBA nor delegable to arbitration. The case of Boston v. Boston Police Superior Officers Fedn., 466 Mass. 210, 993 N.E.2d 693 (2013), mandates this result. There, a police officer serving as a union representative was involved in an altercation with another officer, with whom the officer-representative was regularly required to interact. Id. at 212-213, 993 N.E.2d 693. The police commissioner issued a transfer order upon determining that the officer-representative's "effectiveness as a supervisor had been compromised," prompting the union to file a grievance. Id. at 213, 993 N.E.2d 693. Relying on the police commissioner's statutory authority, and citing the necessity of managerial control to maintain "public safety and a disciplined police force," id. at 215, 993 N.E.2d 693, quoting from Boston v. Boston Police Patrolmen's Assn., 41 Mass. App. Ct. 269, 272, 669 N.E.2d 466 (1996), the Supreme Judicial Court *544 concluded that the transfer of an officer was within the police commissioner's exclusive and nondelegable authority "over the assignment and organization of the officers within the department." *1112 Boston Police Superior Officers Fedn., supra at 215, 993 N.E.2d 693. That power was essential; otherwise, police "managers would have no ability to react to changing conditions in arranging the police force into the necessary bureaus, units, and divisions." Id. at 216, 993 N.E.2d 693.
General Laws c. 41, § 97A, confers the same statutory authority provided to the police commissioner in that case to the police chief in this matter. See Andover Police Patrolmen's Union, 45 Mass. App. Ct. at 169-170, 696 N.E.2d 161. Indeed, the CBA does as well. Moreover, even if the CBA provided otherwise, it could not abrogate the police chief's authority to transfer, assign, and deploy officers according to the police chief's discretion. Massachusetts Coalition of Police, Local 165 v. Northborough, 416 Mass. 252, 255, 620 N.E.2d 765 (1993) ("A town may not by agreement abandon a nondelegable right of management").[8] In short, because the assignment and the deployment of police officers is a nondelegable right of management, it is not a proper subject of collective bargaining.
In this respect, the union's reliance on Boston v. Boston Police Patrolmen's Assn., 477 Mass. 434, 78 N.E.3d 66 (2017), is misplaced. There, the police commissioner terminated an officer for using excessive force against a civilian after the Saint Patrick's Day Parade, and for being untruthful. Id. at 435, 437-438, 78 N.E.3d 66. An arbitrator discredited the civilian's account and ordered the officer reinstated. Id. at 439, 78 N.E.3d 66. On review, the Supreme Judicial Court found that "core *545 matters of discipline and discharge" are delegable and, specifically, a termination may be the subject of an arbitration pursuant to a CBA. Id. at 441, 78 N.E.3d 66. Absent from that case was any suggestion that the arbitrator could order that the officer be given any duty, deployment, or assignment. The arbitrator merely "reinstated [the officer] with back pay." Id. at 439, 78 N.E.3d 66. The Supreme Judicial Court provided no hint that an arbitrator could require the police commissioner to assign the officer to another Saint Patrick's Day Parade or even require that he be assigned to patrol duty. To the contrary, the court repeatedly relied on Boston Police Superior Officers Fedn., 466 Mass. at 216, 993 N.E.2d 693, and provided a long list of cases holding that assignments are nondelegable. Boston Police Patrolmen's Assn., supra at 440, 441 & n.7, 78 N.E.3d 66.
There is no question that Officer Gutwill's suspension may be challenged or that, had he been terminated, the union could seek his reinstatement. Indeed, the union could presumably challenge any action of the police chief with respect to Officer Gutwill (if in violation of the CBA)
*1113 other than his assignment. Similarly, if detective had been a rank in Framingham, such that the police chief had demoted him, Officer Gutwill could have challenged the reduction in rank.[9] Although there is little reason to doubt that Officer Gutwill's disciplinary history was considered in the department's assignment decision, the grievance materially challenged only the reassignment itself. "[The] mere characterization of a feature of a collective bargain or an arbitration award as ... 'terms or conditions of employment' or some other subject conventionally or by law within the scope of either process, will not save the [feature] if in substance it defeats a declared legislative purpose." Lynn, 43 Mass. App. Ct. at 176, 681 N.E.2d 1234, quoting from Watertown Firefighters, Local 1347 v. Watertown, 376 Mass. 706, 714, 383 N.E.2d 494 (1978). The substantive actions disputed in this case are within the exclusive purview of the police chief pursuant to G. L. c. 41, § 97A, and the doctrine of nondelegability.[10] Framingham is not required to justify the transfer and reassignment of Officer Gutwill *546 or prove that the decision, predicated on the best interests of the department, was not otherwise pretext behind disciplinary motives.[11] Worcester, 438 Mass. at 183, 779 N.E.2d 630 (city not required to "present evidence explaining or justifying its decision" concerning nondelegable law enforcement action within managerial prerogative).
A simple example demonstrates why this must be so. Under the union's interpretation of the statutory scheme, the police chief may freely transfer any police officer with a spotless disciplinary record from the detective bureau to the patrol division, and no challenge to that action would be possible. If, however, an officer has been disciplined, any transfer of (or, even, failure to provide a requested assignment to) that officer could be subject to grievance and arbitration to determine whether it was disciplinary and whether it was supported by just cause. Such a regime not only defies logic, but would impose an intolerable burden on a police chief's managerial authority "where matters of public safety are concerned." Saugus Pub. Safety Dispatchers Union, 65 Mass. App. Ct. at 902, 839 N.E.2d 860.
The transfer and reassignment of Officer Gutwill is a nondelegable decision. Parties cannot agree to arbitrate a dispute that "lawfully cannot be the subject of arbitration,"
*1114 Department of State Police v. Massachusetts Org. of State Engrs. & Scientists, 456 Mass. 450, 455, 924 N.E.2d 248 (2010), quoting from Dennis-Yarmouth Regional Sch. Comm. v. Dennis Teachers Assn., 372 Mass. 116, 119, 360 N.E.2d 883 (1977), and a court may not order the arbitration of a dispute that the parties did not agree to arbitrate. Merrimack College v. KPMG LLP, 88 Mass. App. Ct. 803, 808, 42 N.E.3d 1199 (2016). Neither this court nor any arbitrator, as a result, may contravene the decision made by the police chief in this case. See, e.g., Massachusetts Coalition of Police, Local 165, 416 Mass. at 255-256, 620 N.E.2d 765 ; Sheriff of Middlesex County v. International Bhd. of Correctional Officers, Local R1-193, 62 Mass. App. Ct. 830, 831, 821 N.E.2d 512 (2005). The matter *547 may not be submitted to arbitration; accordingly, Framingham is likely to succeed on the merits as a matter of law.[12]
5. Public interest. On the second prong of the preliminary injunction assessment, the requested relief promotes the public interest. See Caplan, 479 Mass. at 95, 92 N.E.3d 691. The doctrine of nondelegability, in respect to the exclusive managerial prerogative of law enforcement authorities and G. L. c. 41, § 97A, is predicated on the prevailing interests of public safety. See Taunton Branch of the Mass. Police Assn., 10 Mass. App. Ct. at 243-245, 406 N.E.2d 1298 ; Andover Police Patrolmen's Union, 45 Mass. App. Ct. at 169-170, 696 N.E.2d 161 ; Saugus Police Superior Officers Union, 64 Mass. App. Ct. at 917, 835 N.E.2d 276. In accordance with the preceding analysis, enjoining arbitration here promotes public safety by allowing the effective and flexible deployment of law enforcement resources and personnel, see Boston Police Superior Officers Fedn., 466 Mass. at 215-216, 993 N.E.2d 693, as well as "preserv[ing] the intended role of the governmental agency and its accountability in the political process." Id. at 214, 993 N.E.2d 693, quoting from Lynn, 43 Mass. App. Ct. at 178, 681 N.E.2d 1234.
6. Conclusion. Framingham is likely to succeed on the merits of its claim, and a preliminary injunction promotes the public interest as reflected in G. L. c. 41, § 97A, and the doctrine of nondelegation in law enforcement decision-making. Framingham is therefore entitled to a preliminary injunction enjoining arbitration of the transfer and reassignment of Officer Gutwill as grieved by the union. Because the motion judge erred in finding otherwise, we reverse the order denying the preliminary injunction and a new order shall enter allowing Framingham's motion for a preliminary injunction.
So ordered.

The town of Framingham became the city of Framingham on January 1, 2018. The legal issues in this case are not affected by the change in status.

Article 3 of the CBA states, "Among the Management Rights vested in the Town are the rights, in accordance with applicable law, to hire, promote, transfer, suspend, demote, discharge and to relieve employees from duty, consistent with all applicable Civil Service rules and regulations.... The Town shall have the freedom of action to determine the methods, and means and the personnel for all operations."

Indeed, the investigator repeatedly stressed that Officer Gutwill "raised his concerns in good faith." Framingham asserts in its brief that the investigator issued two reports finding that Officer Gutwill was untruthful to her. No evidence of that has been presented to us or, so far as we can discern, to the Superior Court judge.

While on administrative leave, Officer Gutwill filed a civil complaint in the United States District Court for the District of Massachusetts, predicated on the same factual accusations, pursuant to 42 U.S.C. § 1983. In the Federal lawsuit, Officer Gutwill seeks, inter alia, reinstatement to the DEA task force as a detective with full fringe benefits and seniority rights, treble damages for his lost wages, benefits, and other remuneration, with interest, as well as additional compensatory and punitive damages. As of this date, the Federal lawsuit remains pending. Nothing here should be construed as expressing any opinion about the merits of the Federal lawsuit.

According to the union, Officer Gutwill also appealed his suspension to the Civil Service Commission. At oral argument, Framingham represented that this appeal ultimately was withdrawn.

Apparently by agreement of the parties, no arbitration proceedings on the matter have been held pending this court's decision.

Because the union raises no objection to our review (and, indeed, affirmatively desires a decision), we need not reach the question whether the union could seek to prohibit appellate review at this stage by invoking G. L. c. 150C, § 16, which does not authorize an appeal from an order allowing arbitration to proceed. See Old Rochester Regional Teacher's Club v. Old Rochester Regional Sch. Dist., 18 Mass. App. Ct. 117, 118, 463 N.E.2d 581 (1984) (because appeal requirements adopted pursuant to § 16 "are comprehensive, an appeal [at least as of right] from any type of order not so enumerated is precluded"). See also School Comm. of Agawam v. Agawam Educ. Assn., 371 Mass. 845, 846, 359 N.E.2d 956 (1977) (order denying application to stay arbitration not appealable under § 16 ).

General Laws c. 150E, § 7(d ), amended by St. 1998, c. 9, which provides that "[i]f a collective bargaining agreement ... contains a conflict between matters which are within the scope of negotiations pursuant to [G. L. c. 150E, § 6,] and ... the regulations of a police chief pursuant to [G. L. c. 41, § 97A,] or of a police commissioner ... the terms of the collective bargaining agreement shall prevail," is not to the contrary. The assignments of police officers pursuant to G. L. c. 41, § 97A, are not regulations of a police chief or a police commissioner, and we have previously held that G. L. c. 150E, § 7(d ), does not displace a police chief's authority to assign officers. Saugus Police Superior Officers Union, 64 Mass. App. Ct. at 917, 835 N.E.2d 276, quoting from Andover Police Patrolmen's Union, supra at 170, 696 N.E.2d 161 ("nothing in [G. L. c. 150E, § 7(d ),] purports to displace the general authority vested in a police chief by § 97A to order his officers to a mandatory overtime deployment when, in his judgment, the public safety so requires"). Because the assignment of police officers is not a proper subject of collective bargaining, there is no need to reconcile conflicts between a police chief's authority and collective bargaining on assignments of police officers.

Nonetheless, his assignment remains nondelegable. For example, if the police chief assigned a ranking detective to patrol duties, while retaining the detective's rank and compensation, the assignment would not be subject to arbitration.

The laws regarding the joint labor-management committee (committee), G. L. c. 23, § 9S, inserted by St. 2007, c. 145, § 5, "as established by [St. 1973, c. 1078], and as most recently amended by [St. 1987, c. 589]," do not control here. By express provision, the committee applies only where an impasse in collective bargaining negotiations exists between a public employer and its employees. G. L. c. 150E, § 9. The CBA in this case was not the result of such circumstances.

A different analysis would be necessary if Officer Gutwill raised claims based on constitutional discrimination. The doctrine of nondelegation generally must give way to the constitutional and statutory prohibitions on invidious discrimination. See Blue Hills Regional Dist. Sch. Comm. v. Flight, 383 Mass. 642, 644, 421 N.E.2d 755 (1981) (creating exception to nondelegable, managerial prerogative over educational policy for the "[d]enial of promotion to a public employee because of her sex [because such denial] is constitutionally impermissible and violates statutory proscriptions").

We emphasize, however, that this conclusion is limited to the arbitrability of Officer Gutwill's assignment. Nothing here should be taken as suggesting any opinion about the merits of any other proceeding.