NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-123

MASSACHUSETTS DEPARTMENT OF TRANSPORTATION

vs.

UNITED STEELWORKERS, LOCAL 5696.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, United Steelworkers, Local 5696 (union), appeals from an amended judgment entered on the pleadings in favor of the plaintiff, the Massachusetts Department of Transportation (department).  The judgment vacated an arbitration award of backpay and seniority rights to an employee of the department.  Because we conclude that the arbitrator did not exceed his authority, we reverse.

Background.  We recite the facts as found by the arbitrator.  Adrian Braka is employed by the department in its Highway Operations Center (HOC) as an HOC Operator II.  The HOC provides "24/7" traffic management and emergency response for roads and tunnels in the Commonwealth.

In March 2020, following the onset of the COVID-19 pandemic, the Governor declared a state of emergency.  Although much of the department's in-person operations were shut down, the HOC continued its operations.  In August 2021, the Governor issued an executive order requiring all executive department employees to provide proof of vaccination against COVID-19 on or before October 17, 2021,[1] or to obtain an exemption "where a reasonable accommodation can be reached" for employees unwilling to receive vaccination due to sincerely held religious beliefs.

The department subsequently adopted a policy that required employees to show proof of vaccination against COVID-19 as a condition of employment or to submit a request for a medical or religious exemption.  Under the policy, employees who failed to comply would face progressive discipline, beginning with a five-day suspension without pay and culminating in termination of employment.

On September 28, 2021, Braka submitted a religious exemption request form to the department and attached a letter from his pastor.  On October 12, Braka was interviewed by the department's director of equal employment opportunity programs. This interview focused solely on Braka's religious beliefs and

---

[1] Executive Order No. 595 (Aug. 19, 2021).

2

did not cover the subject of possible accommodations.[2]  The department subsequently denied Braka's request, claiming that granting his request would impose an undue hardship and that the department "explored the possibility of transferring or reassigning [Braka] to a vacant position, but no alternative assignments" were available at that time.[3]

On November 5, 2021, Braka submitted an appeal, proposing possible accommodations such as remote work, regular testing for COVID-19, and social distancing, and further suggesting that he could work "in a separate space at the HOC or [department] building."  The department denied the appeal, claiming that Braka had failed to provide any new or differing information or evidence of a mistake of fact or interpretation of law or policy.  After his request for an accommodation was denied, Braka continued to oppose vaccination on religious grounds, and the department proceeded with the progressive disciplinary steps outlined in its vaccination policy.  The department terminated Braka on December 14, 2021.

---

[2] The department determined that Braka had sincerely held religious beliefs and does not challenge the sincerity of those beliefs on appeal.

[3] The department's director of human resources testified that approximately one hundred applications for exemptions were filed by department employees, but that he did not recall any accommodations being granted for religious exemptions.

At all relevant times, the department was party to a collective bargaining agreement (CBA) with the union. The CBA included, in relevant part, provisions that prohibited the department from discriminating against employees based on "religion" or "creed" or from discharging nonprobationary employees "without just cause." The CBA also included a standard grievance procedure, including "final and binding" arbitration under G. L. c. 150C.

The union grieved Braka's termination and requested arbitration. In the meantime, because of decreasing transmission rates and increased level of vaccinations against COVID-19, on October 18, 2022, the department offered to reinstate Braka, and he returned to work. The union continued to pursue arbitration seeking lost wages, benefits, and seniority, and claiming that the department had failed to reasonably accommodate Braka's sincerely held religious beliefs and had disciplined and terminated him without just cause.[4]

Following a hearing, the arbitrator found that the department failed to meet its burden of proving that it had properly considered possible accommodations for Braka's

---

[4] The parties agreed to the following questions for arbitration: (1) "Did [the department] deny reasonable accommodation to [Braka]?" and (2) "If so, what shall the remedy be?"

4

sincerely held religious beliefs. While the department claimed to have considered accommodations, including reassignment to another position at the department, remote work, or work in a separate space at the HOC, the arbitrator found that the department's investigation into each of these options was "cursory." He further noted that the department's conclusions that such accommodations were unavailable or not possible "were only supported by conclusionary statements offered at hearing," and that there was "insufficient evidence that anyone looked into lists of vacant positions, or lists of vacant rooms available, or the specifics of what was needed for [Braka] to work remotely." The arbitrator sustained the union's grievance and ordered back pay, benefits, and seniority credit.

The department filed a complaint in the Superior Court pursuant to G. L. c. 150C, § 11, seeking to vacate the arbitration award on the ground that the arbitrator had exceeded his authority in issuing an award that "violates public policy" in that it "imperils the safety of the traveling public and [department] employees by limiting [the department's] ability to provide essential public safety services." In his memorandum of decision and order on cross-motions for judgment on the pleadings, the Superior Court judge agreed with the department and found that the arbitrator's award interfered with the

5

department's nondelegable rights under its enabling statute, G. L. c. 6C, § 3 (6).  Section 3 (6) grants the department, in relevant part, the authority to "direct, coordinate and supervise the administration of the department to promote economy and efficiency."

The judge stated that this "admittedly very broad" grant of authority "encompasses the [department's] obligation to ensure public safety," and found that "staffing decisions taken in furtherance of efficient and effective operation of the command and control functions of the HOC, particularly during the COVID-19 pandemic, are nondelegable powers reserved to the [department]."  In vacating the award, the judge held that the arbitrator had exceeded his authority by substituting his judgment that there were "possible accommodations" in place of "the opposite conclusion reached by the department."  The union appealed.

Discussion.  "We review a decision affirming or denying a motion for judgment on the pleadings . . . as well questions of statutory interpretation, de novo."  Hovagimian v. Concert Blue Hill, LLC, 488 Mass. 237, 240 (2021).  See Boston Teachers Union, Local 66 v. School Comm. of Boston, 494 Mass. 519, 521-522 (2024).

6

"A reviewing court generally accords deference to the decision of an arbitrator in a collective bargaining dispute governed by the provisions of G. L. c. 150C, §§ 1-16."  Chaloff v. Westwood Pub. Sch., 105 Mass. App. Ct. 13, 15 (2024), citing School Comm. of Lexington v. Zagaeski, 469 Mass. 104, 110 (2014).  "Unlike our review of factual findings and legal rulings made by a trial judge, we are strictly bound by an arbitrator's findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing."  Lynn v. Thompson, 435 Mass. 54, 61 (2001), cert. denied, 534 U.S. 1131 (2002).  With limited exceptions, the parties "cannot ordinarily obtain judicial relief if they disagree with the decision rendered by the individual whom they have empowered to adjudicate the controversy."  Boston Police Patrolmen's Ass'n v. Boston, 60 Mass. App. Ct. 672, 674 (2004).  However, "the question whether the arbitrator[] acted in excess of the authority conferred on [him], as [found by the Superior Court judge] in the present case, is always open for judicial review" (citation omitted).  Higher Educ. Coordinating Council/Roxbury Community College v. Massachusetts Teachers' Ass'n/Mass. Community College Council, 423 Mass. 23, 27 (1996).

7

The union argues that the judge erred in finding that the department's enabling statute grants it a nondelegable public-safety management right and in determining that the arbitrator's award interfered with that right.[5]  While these arguments may have some heft,[6] we need not decide them, as we agree with the union that, even if the department has such a nondelegable right and the arbitration award somehow impinges on that right, the doctrine of nondelegation must give way to the constitutional prohibition on religious discrimination.[7]  See Blue Hills

---

[5] In its brief, the department defines the scope of its authority under the relevant portion of its enabling statute as the "nondelegable managerial duty to maintain a safe workplace and to provide critical safety services to the public in the specific context of making decisions regarding staffing during a surge in the COVID-19 pandemic."

[6] Statutes that confer only "general" management authority on an employer ordinarily "must yield to the obligation to engage in collective bargaining."  Board of Higher Educ. v. Commonwealth Employment Relations Bd., 483 Mass. 310, 319 (2019).  Here, the department relies on statutory language that defines the scope of its management authority in the broadest of terms, empowering it to "direct, coordinate and supervise the administration of the department to promote economy and efficiency."  G. L. c. 6C, § 3 (6).  The department cites no case that has interpreted comparably broad language to give an employer nondelegable powers over all staffing decisions, even those that might violate an antidiscrimination provision of the CBA.

[7] The department contends that the union has waived any argument that an exception for constitutional discrimination applies in this case because the union only "flatly asserted" the constitutional proscription against religious discrimination in its filings.  This argument is unavailing, as the union did invoke constitutional proscriptions against religious

8

Regional Dist. Sch. Comm. v. Flight, 383 Mass. 642, 644 (1981). See also Framingham v. Framingham Police Officers Union, 93 Mass. App. Ct. 537, 546 n.11 (2018) ("The doctrine of nondelegation generally must give way to the constitutional and statutory prohibitions on invidious discrimination").

In Flight, 383 Mass. at 644, the Supreme Judicial Court carved out an exception to the doctrine of nondelegation for cases where a grievant raises claim that implicate constitutional and statutory prohibitions on invidious discrimination by a public employer. See id. The court reasoned that a "[d]ecision by an arbitrator in such a case is no more intrusive than [a] decision by an independent commission, and does not unreasonably trespass on the managerial authority of the employing agency." Id. Here, the arbitrator determined that the department failed to satisfy its burden of sufficiently investigating potential religious accommodations. Consequently, the award at issue does not unreasonably trespass on the department's authority because the same result could have been attained in an administrative proceeding. See Stonehill

---

discrimination below and the arbitrator's finding that the department failed to meet its burden to consider religious accommodations clearly implicates the proscription against such discrimination under the First Amendment to the United States Constitution and art. 46, § 1, of the Massachusetts Declaration of Rights.

9

College v. Massachusetts Comm'n Against Discrimination, 441 Mass. 549, 567, 570-576 (2004), quoting G. L. c. 151B, § 5 (on finding of employment discrimination, Massachusetts Commission Against Discrimination [MCAD] has broad authority to take "affirmative action, including but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay").  See also New York and Mass. Motor Servs., Inc. v. Massachusetts Comm'n Against Discrimination, 401 Mass. 566, 568, 584 (1988) (affirming finding that employee was discriminated against on basis of religion and remanding for recalculation of award of back pay).[8]

The department does not contest that the same result could have been obtained in an administrative proceeding and instead argues that the exception to the doctrine of nondelegation articulated in Flight has been narrowed.  The cases cited by the department, however, merely follow precedent in declining to extend this exception to allegations of discrimination on the basis of union membership, a category that is not similarly constitutionally protected.  See Department of State Police v. Massachusetts Org. of State Eng'rs and Scientists, 456 Mass.

---

[8] The department does not contend that Braka was not qualified for his position as HOC Operator II.  Indeed, the department voluntarily reinstated Braka to that position in October 2022.

450, 459 (2010) ("<u>Flight</u>'s restricted exception to the nondelegability doctrine does not cover . . . discrimination claim based on [grievant's] union membership and activities"). See also <u>Sheriff of Middlesex County</u> v. <u>International Bhd. of Correctional Officers, Local R1-193</u>, 62 Mass. App. Ct. 830, 834 (2005) (<u>Flight</u> exception was not triggered where discrimination claim was based on union membership and not membership in constitutionally protected category such as gender or race). While <u>Flight</u> does not specifically restrict its holding to cases alleging constitutionally proscribed discrimination, we are satisfied that the arbitrator's findings here implicate statutory and constitutional proscriptions against religious discrimination, and that the circumstances of this case fall within the narrow exception announced in <u>Flight</u>.[9]

---

[9] Because we find that this case falls within the narrow exception to the nondelegability doctrine articulated in <u>Flight</u>, 383 Mass.at 644, we need not reach the union's argument that even if the department had the nondelegable staffing authority it claims, the arbitrator's award of back pay, benefits, and seniority credit could not impermissibly interfere with such authority. See, e.g., <u>Higher Educ. Coordinating Council/Roxbury Community College</u>, 423 Mass. at 33 (award of damages within scope of arbitrator's powers "so long as the damages were in an amount that would not have the effect of compelling reinstatement" [quotation and citation omitted]).

11

Conclusion. The judgment is reversed, and a new judgment shall enter confirming the arbitration award.

So ordered.

By the Court (Vuono, Shin & Smyth, JJ.[10]),

Clerk

Entered: April 10, 2026.

---

[10] The panelists are listed in order of seniority.